# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## APRIL 1997 SESSION

FILED

June 25, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,            )
                              )
    Appellee,            )
                              )  NO. 03C01-9607-CC-00263
VS.                            )
                              )  ANDERSON COUNTY
                              )
FRANK WEAVER,                  )  Hon. James B. Scott, Judge
                              )
    Appellant.            )  (Vehicular Homicide, Vehicular
                              )  Assault, Misdemeanor Assault
                              )  and Driving Without a License)
                              )

**FOR THE APPELLANT:**

**J. THOMAS MARSHALL, JR.**
District Public Defender
101 South Main Street
Clinton, TN 37716

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**MICHAEL J. FAHEY, II**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

**JAMES N. RAMSEY**
District Attorney General

**BETH BOATNER**
**JAN HICKS**
**JOHN MADDOX**
Assistant District Attorneys General
127 Anderson County Courthouse
Clinton, TN 37716

OPINION FILED: _____

**AFFIRMED IN PART,
REVERSED IN PART**

**JOE G. RILEY,
JUDGE**

## OPINION

The appellant, Frank Weaver, was convicted by a jury of vehicular homicide, vehicular assault, misdemeanor assault and driving without a license. The trial court sentenced him to concurrent maximum sentences of fifteen (15) years for vehicular homicide, twelve (12) years for vehicular assault, eleven (11) months and twenty-nine (29) days in the county jail for misdemeanor assault and 30 days in the county jail for driving without a license. The trial court also imposed the maximum fine allowable by statute on each offense. On appeal, Weaver presents six issues for our review:

> (1) whether the evidence was sufficient to sustain his convictions for vehicular homicide, vehicular assault and misdemeanor assault;
>
> (2) whether the evidence used to convict him of driving without a license was inadmissible, and as a result, insufficient as a matter of law to sustain this conviction;
>
> (3) whether blood samples used as evidence were illegally seized by law enforcement personnel;
>
> (4) whether the trial court properly instructed the jury on flight;
>
> (5) whether the trial court violated double jeopardy principles in sentencing him as a Range III Offender for vehicular homicide and as a Career Offender for vehicular assault; and
>
> (6) whether the trial court abused its discretion in imposing maximum fines.

Because we find that the conviction for driving without a license was based on inadmissible hearsay, we reverse that conviction. In all other respects, the judgment of the trial court is affirmed.

## FACTS

On December 22, 1993, at approximately 12:15 p.m., the car driven by Frank Weaver crossed the center line on Highway 25W in Clinton, Tennessee, and struck the car driven by Sarah Stockstill. Weaver's car went airborne, flipped and landed upside down. The impact caused the Stockstill car to go into a spin and collide with another car, driven by Allen Reed.

2

Emergency personnel were immediately dispatched to the scene. Seriously injured by the accident, Weaver was transported by helicopter to the University of Tennessee Hospital in Knoxville. Tyson Marlow, a passenger in the Reed car, also had to be hospitalized due to a lacerated spleen. Reed suffered back problems as a result of the accident. Stockstill was pronounced dead at Methodist Medical Center in Oak Ridge.

Sergeant Mark Lucas was the lead investigator. In the course of his investigation, he learned from witnesses that Weaver had been driving erratically and that he had admitted to a paramedic that he had been drinking. Sergeant Lucas sent Officer Frank Cox to the University of Tennessee Hospital in order to have Weaver's blood tested. A sample of blood was drawn at 2:45 p.m. and another at 3:00 p.m. The testing indicated that Weaver's blood alcohol content was 0.12 gram percent in the sample collected at 2:45 and 0.11 gram percent in the sample taken at 3:00.

Although Weaver's doctors had expected his stay at the hospital to be around seven to ten days, Weaver disappeared from the hospital three days after he was admitted. He was located by the police two weeks later in a motel in Roane County.

After a trial, the jury found Weaver guilty of vehicular homicide, vehicular assault, misdemeanor assault and driving without a license. The trial court sentenced him as a Range III, Persistent Offender to fifteen (15) years for the offense of vehicular homicide, a Class C felony. He was sentenced as a Career Offender to twelve (12) years for the offense of vehicular assault, a Class D felony. The trial court sentenced him to eleven (11) months and twenty-nine (29) days in the county jail for misdemeanor assault and 30 days in the county jail for driving without a license. The sentences were to be served concurrently with each other, but consecutively to a life sentence for which he was on parole at the time of the present offenses. The trial court further assessed maximum fines of $10,000 for vehicular homicide, $5,000 for vehicular assault, $2,500 for misdemeanor assault, and $50 for driving without a license. From these convictions and sentences,

3

Weaver brings this appeal.

## SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, Weaver contends that the evidence is insufficient as a matter of law to sustain the convictions for vehicular homicide of Stockstill, vehicular assault of Marlow, and misdemeanor assault of Reed. Specifically, he claims that the evidence does not establish that he acted recklessly nor that the accident and resulting injuries were proximately caused by his intoxication. Furthermore, he insists that the evidence does not show that Tyson Marlow suffered the "serious bodily injury" requisite for vehicular assault. As a result, he argues that these convictions should be reversed.

When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

On appeal, the state is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Id. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Vehicular homicide is defined as "the reckless killing of another by the operation of an automobile . . . as the proximate result of the driver's intoxication." Tenn. Code Ann. § 39-13-213(a)(2). A person commits vehicular assault if he, "as

4

the proximate result of [his] intoxication . . . recklessly causes serious bodily injury to another person by the operation of a motor vehicle." Tenn. Code Ann. § 39-13-106(a). A person commits assault who "intentionally, knowingly or recklessly causes bodily injury to another." Tenn. Code Ann. § 39-13-101(a)(1).

A person acts recklessly when he is "aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Tenn. Code Ann. § 39-11-106(a)(31). Additionally, "if recklessness establishes an element of an offense and the person is unaware of a risk because of voluntary intoxication, the person's unawareness is immaterial in a prosecution for that offense." Tenn. Code Ann. § 39-11-503(b).

Weaver claims that the evidence fails to show recklessness and that the collision was the proximate result of his intoxication. Witnesses testified that Weaver's driving was erratic prior to the incident. He crossed the center line on several occasions and had trouble staying within his lane of travel. Emergency personnel and other witnesses testified that he smelled of alcohol. He even admitted to a paramedic that he had been drinking. Furthermore, two hours after the accident, Weaver's blood alcohol content tested 0.12%, which translated to 0.13% at the time of the accident. This allowed the jury to infer that Weaver was under the influence and impaired. *See* Tenn. Code Ann. § 55-10-408(a). Accordingly, we conclude that there is substantial evidence in the record that the accident was the proximate result of Weaver's driving under the influence. Likewise, we find that the jury was warranted in finding that Weaver's conduct was reckless. Evidence of intoxication is relevant to a jury's determination of the reckless nature of a defendant's conduct. *See* State v. Billy E. Johnson, C.C.A. No. 02C01-9605-CR-00162 (Tenn. Crim. App. filed March 19, 1997, at Jackson).

Weaver also argues that the evidence was insufficient to show that Tyson Marlow suffered the serious bodily injury required for vehicular assault. Serious bodily injury is defined as bodily injury which involves: (a) a "substantial risk of death;" (b) "protracted unconsciousness;" (c) "extreme physical pain;" (d) "protracted or obvious disfigurement;" or (e) "protracted loss or substantial impairment of a

function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(a)(33). Dr. Alan Anderson testified that Marlow's spleen was lacerated and that there was evidence of bleeding in his "cavity." He characterized the injury as a grave four laceration, the most severe type. He also stated that the injury was potentially life-threatening and involved a substantial risk of death. There is sufficient evidence in the record to sustain the jury's finding that Marlow suffered serious bodily injury.

The evidence is sufficient to support the convictions for vehicular homicide, vehicular assault and misdemeanor assault. This issue is without merit.

## INADMISSIBLE HEARSAY

Weaver next argues that the trial court erred in allowing hearsay evidence to be admitted regarding the status of his driver's license. Because no other evidence was offered by the state to support this conviction, he contends that the evidence is insufficient as a matter of law to sustain this conviction.

At trial, Sergeant Lucas testified that he contacted the dispatcher with the Anderson County Sheriff's Department in an effort to find a record of Weaver's driver's license and/or driving history. He testified that the dispatcher could find no evidence of a driver's license or history. The dispatcher did not testify. The state concedes that this testimony was inadmissible hearsay. We agree. Moreover, because the state failed to offer any other proof in support of this conviction, the conviction for driving without a license must be reversed and remanded.

## ADMISSION OF BLOOD TEST RESULTS

Weaver claims that the trial court erred in admitting into evidence the results of the blood tests. He specifically asserts that the police seized his blood in violation of the Fourth Amendment to the United States Constitution. Therefore, he

6

argues that the blood test results should have been suppressed at trial.

In support of his argument, Weaver relies on Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In Schmerber, the Supreme Court held that the "compulsory administration" of a blood test "plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment." 384 U.S. at 767, 86 S.Ct. at 1834. However, the seizure of blood for alcohol testing is not constitutionally prohibited as long as four prerequisites are met; namely: (1) the officer compelling the extraction of blood from the accused has probable cause to believe that the accused committed the offense of vehicular homicide or vehicular assault while under the influence of an intoxicant or drug, and there is a clear indication that evidence of his intoxication will be found if the blood is taken from his body and tested; (2) exigent circumstances exist to ignore the warrant requirement; (3) the testing method is reasonable and competent for determining blood-alcohol content; and (4) the test is performed in a reasonable manner. Schmerber, 384 U.S. at 768-72, 86 S.Ct. 1834-36; see also State v. Greene, 929 S.W.2d 376, 380 (Tenn. Crim. App. 1995); State v. Cleo Mason, C.C.A. No. 02C01-9310-CC-00233 (Tenn. Crim. App. filed March 13, 1996, at Jackson). Weaver does not contest the third and fourth prerequisites.

Weaver does argue that the law enforcement officials did not have probable cause to believe that he was under the influence of alcohol. At the suppression hearing, paramedic Joey Childs testified that Weaver smelled of alcohol following the accident. Officer M.H. Whaley testified that Rodney Borden, who was driving behind Weaver, told him that Weaver was "speeding up and slowing down, driving erratically within the traffic lanes, crossing the lane - the center lane of traffic - into the oncoming lanes." Furthermore, Sergeant Lucas testified that flight paramedic Robert Byrd advised him that Weaver smelled of alcohol and had admitted that he had been drinking. We conclude that Sergeant Lucas plainly had probable cause to believe that Weaver was under the influence of alcohol at the time of the accident.

Furthermore, Weaver claims that exigent circumstances did not exist that

would allow disregarding the warrant requirement. The Court in Schmerber recognized that the amount of alcohol in the blood could diminish during the time it takes to get a warrant. 384 U.S. at 770-71, 86 S.Ct. at 1835-36; *see also* State v. Mabon, 648 S.W.2d 271, 275 (Tenn. Crim. App. 1982). In the present case, the officers were not able to obtain a sample of blood until two hours after the accident. Indeed, the alcohol level in his blood dropped 0.01 gram percent in fifteen minutes. Certainly, exigent circumstances were present which would allow the officers to forego the warrant requirement.

Weaver also makes an innovative argument that the officers should have applied for a warrant after the blood was extracted. He maintains that after the blood was drawn, any exigent circumstances would disappear. However, after the blood was drawn, the Fourth Amendment is not implicated as there is no governmental intrusion at that point. This issue has no merit.

## JURY INSTRUCTION ON FLIGHT

In his next assignment of error, Weaver argues that the trial court improperly instructed the jury on the issue of flight. He urges that the jury instruction constitutes an impermissible and unconstitutional comment on the evidence by the trial judge. He also claims that the instruction is a comment on his failure to testify. The court's instruction to the jury on flight is as follows:

> Flight. The flight of a person accused of a crime [is a circumstance] which, when considered with all the facts of the case, may justify an inference of guilt. Flight is the voluntary withdrawal of one for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for you, the jury, to determine. The law makes no precise distinction as to the manner or method of flight. It may be open or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both a leaving and a subsequent hiding out, evasion, or concealment in the community or a leaving of the community for parts unknown to constitute a flight. If a flight is proved, the act of flight alone does not allow you to find the Defendant guilty of the crime alleged. However, since flight by [a] Defendant may be caused by a consciousness of guilt, you may consider that, the fact of flight, if flight is so proven, together with all of the other evidence when you decide the guilt or innocence of the Defendant. On the other hand, an entirely innocent person may leave a place and such absence may be reasonable as

8

shown by the proof offered or by the facts and circumstances proven in this case. Whether there was flight by the Defendant, the reason for it, and the weight to be given to it are questions for you to determine.

The charge to the jury substantially conforms to T.P.I. - Crim. § 37.16 (2d ed. 1988). Our Supreme Court has previously held that Tennessee allows instructions as to the inference that may be drawn from a defendant's flight. State v. Harris, 839 S.W.2d 54, 74 (Tenn. 1992). This does not constitute a comment on the evidence. Hill v. State, 461 S.W.2d 50, 52 (Tenn. Crim. App. 1970); *see also* State v. Thomas E. Medders, C.C.A. No. 02C01-9407-CR-00139 (Tenn. Crim. App. filed July 19, 1995, at Jackson) (holding that statements regarding defendant's flight in prosecution's closing argument are not improper comments on the defendant's failure to testify).

Additionally, Weaver contends that the evidence does not support such an instruction. After the accident, he was taken to the University of Tennessee Hospital in Knoxville. Dr. Tom Chapman, Weaver's treating physician, described Weaver as having multiple and serious injuries. At the time he was admitted, Weaver had a right flailed chest, facial lacerations, a nasal fracture, a right open tibial and fibular fracture, bilateral ankle fractures on the left, and a tarsal fracture. Dr. Chapman believed that Weaver needed to be hospitalized for seven to ten days, and probably longer. He testified that, against his advice, Weaver disappeared from the hospital three days after he was admitted. Sergeant David Queener testified that he searched for Weaver for two weeks. Weaver was finally located in a motel in Roane County. When he was apprehended, he told the officers that "he didn't mean to kill the girl."

There is sufficient evidence in the record from which a jury could infer that Weaver was hiding out in order to evade arrest or prosecution. Furthermore, the jury was correctly instructed that they were not required to infer flight and flight alone does not support a finding of guilt. State v. Stafford, 670 S.W.2d 243, 246 (Tenn. Crim. App. 1984). Thus, the trial court was warranted in charging the jury on flight. *See* State v. Hill, 875 S.W.2d 278, 284 (Tenn. Crim. App. 1993); State v. Payton, 782 S.W.2d 490, 498 (Tenn. Crim. App. 1989).

9

## SENTENCING CLASSIFICATIONS

Weaver next claims that the trial court erred in sentencing him as a Range III Offender for the offense of vehicular homicide and as a Career Offender for the offense of vehicular assault. He asserts that this violates double jeopardy in that the trial court used the same prior convictions to enhance his sentence that were used to previously convict him as an habitual criminal. It should be noted initially that Weaver agreed to these sentencing classifications at the sentencing hearing. Therefore, this issue is waived. *See* Tenn. R. App. P. 36(a).

Moreover, our Supreme Court has held that the use of prior convictions to enhance a subsequent felony conviction does not offend double jeopardy principles under the State of Tennessee or United States Constitution. Pearson v. State, 521 S.W.2d 225, 228 (Tenn. 1975); *see also* State v. Dobbins, 754 S.W.2d 637, 644 (Tenn. Crim. App. 1988).

## MAXIMUM FINES

In his final issue, Weaver argues that the trial court erred in imposing the maximum fines without considering his ability to pay the fines. He claims that his indigence precludes the court from assessing any fine at all.

This Court has the authority to review fines pursuant to the 1989 Sentencing Act. State v. Bryant, 805 S.W.2d 762, 766 (Tenn. 1991). The defendant's ability to pay the fine is a factor to be considered along with other factors involved in determining the total sentence. Id. However, the defendant's ability to pay the fine is not necessarily a controlling factor. State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). A substantial fine may be punitive in the same manner that incarceration may be punitive. Id. Due to Weaver's prior record and the circumstances surrounding this offense, the trial court did not err in imposing maximum fines allowable by statute. This issue is without merit.

## CONCLUSION

Due to the absence of competent evidence to support Weaver's conviction for driving without a license, this conviction is reversed and remanded for a new trial. However, we conclude that all other assignments of error are without merit. Accordingly, the judgment of the trial court on all other issues is affirmed.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JERRY L. SMITH, JUDGE**

_____
**CHRIS CRAFT, SPECIAL JUDGE**