# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### DECEMBER SESSION, 1997

FILED

January 26, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9704-CC-00134** |
| | ) | |
| Appellant, | ) | |
| | ) | **SEVIER COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. BEN W. HOOPER, JUDGE** |
| **JERRY RONALD HARRIS,** | ) | |
| | ) | |
| Appellee. | ) | **(CONSPIRACY; SALE OF LSD)** |

FOR THE APPELLEE:

**BRYAN E. DELIUS**
124 Court Avenue, Suite 201
Sevierville, TN  37862

FOR THE APPELLANT:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**PETER M. COUGHLAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN  37243

**ALFRED C. SCHMUTZER, JR.**
District Attorney General

**CHARLES ATCHLEY, JR.**
Assistant District Attorney General
Sevier County Courthouse
Sevierville, TN  37862

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

In this case the State appeals as of right from the sentence imposed by the Circuit Court of Sevier County. The Defendant, Jerry Ronald Harris, pled guilty to conspiracy to sell LSD, a Class C felony, and to sale of LSD, a Class B felony. The trial court ordered the Defendant to serve six (6) years on the conspiracy charge and eight (8) years for the sale of LSD. The sentences were to be served concurrently in the Community Corrections program with the first six (6) months of the sentence being incarceration in the Sevier County jail. The State challenges the length of the sentence for the sale of LSD and manner of service of both of the Defendant's sentences. We affirm the judgment of the trial court.

When the length, range or the manner of service of a sentence is challenged, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

At the sentencing hearing, the State did not present any proof other than a copy of a judgment showing Defendant was convicted of burglary on August 2, 1993 and the "Specific Data Report," which included other information of his prior record. The Defendant and several witnesses testified on the Defendant's behalf. Shelly Shular, a former employer of the Defendant, stated that he was an excellent employee during his two years at her business, Atrium Flowers. Shular stated that Defendant's attitude improved throughout the time he was working for her, and that he was an honest and punctual employee. Shular works with troubled children from all types of backgrounds, and some of the Defendant's friends introduced her to the Defendant. Shular described Defendant as "a young adult who needed acceptance badly and was going about it all the wrong ways . . . most likely out of immaturity." She stated that during the time Defendant worked for her, he was living on his own while his parents lived in Kentucky. Because he lived on his own, the home became a hangout for young people and trouble could transpire freely. Shular saw Defendant hit rock bottom and then begin to change his life. She stated that while she had never testified on behalf of somebody in a drug situation due to the extensive harm that drugs can do, she felt that Defendant had a chance at changing his life. During this time, Defendant had a difficult time finding employment, but came to her and agreed to perform household cleaning tasks in return for money to support his family.

Robert Ownby, a friend of the Defendant, testified that he met Defendant the summer prior to his senior year of high school. Defendant was new to the area and was ostracized by the rest of his peers, even to the point that Defendant was beaten by others at school. Following graduation, Ownby saw the Defendant start hanging out with the "wrong crowd." During this time, Defendant stopped associating with Ownby because Ownby was married and had a child. Following the last convictions Defendant received, Ownby saw a true change in the Defendant. Defendant had asked for spiritual counseling and appeared to be truly remorseful.

J.R. Harris, Sr., the Defendant's father, testified that he moved to Kentucky in December 1989. He served as the Chief of Police in Middlesboro, Kentucky until he returned to Tennessee in December 1994. Harris described his son as an average student who had never had any violent tendencies and was always willing to help others in need. Approximately six (6) months before his return to Tennessee, Harris had the first indication that Defendant was using drugs. Since July 1995, Harris has seen a change in the Defendant. Defendant now has a child that he is trying to take responsibility for and raise. He was of the opinion that Defendant has demonstrated that he is sorry for his actions by voluntarily enrolling in a drug rehabilitation program.

The Defendant stated that his actions surrounding the convictions were "the worse [sic] mistake I ever made in my entire life." He testified that he did not make a living selling drugs, nor had he ever sold drugs prior to the night in question. When asked to tell why he committed the drug offenses, Defendant stated that he had received a call from a bank employee a couple of days earlier stating that if he did not pay a total of three (3) car payments, then the bank was going to repossess his car. After going to several banks to try to secure a loan and being refused, the next

thing Defendant knew he was selling LSD to a friend in order to make some extra money to pay for his car. At that time, Defendant stated that he had a drug problem, including using LSD, cocaine, Maximum Impact, and marijuana. To cure his drug addiction, Defendant voluntarily entered himself in a drug rehabilitation program. While the Defendant was in rehabilitation, all his drug screens were negative and he has been drug free since then.

The Defendant stated that the birth of his son has changed his life the most. Defendant admitted his mistakes, but stated that since his child has been born he has not been in any trouble. He has held a steady job and has done whatever he could to support his family. Defendant is also working on a program with his friends to begin visiting local schools to teach children about the dangers of LSD.

LENGTH OF SENTENCE

The State argues that the trial court improperly applied three (3) mitigating factors in determining the Defendant's sentence, and even if these factors are accepted, the sentence should be increased because the trial court did not follow its own findings of fact. Following the proof at the sentencing hearing, the trial court stated that he took into consideration mitigating and enhancement factors. First, he noted that he did not consider the mitigating factor of Defendant's "youth" in that he lacked substantial judgment in committing the offense. Tenn. Code Ann. § 40-35-113(6). The trial court stated that he did not "consider that in this case because [Defendant] had really reached the point that I would not consider [him] to be a young man, at age twenty-four (24), when this offense was committed. However, the court expanded to say that "even though I am not considering specifically youth, I have taken into consideration that for other reasons, maybe, you did, obviously,

lack substantial judgment." While not specifically stated, it appears that the trial court was referring to Tennessee Code Annotated section 40-35-113(13), the "catch-all" mitigating factor, whereby the trial court may take into consideration any factor which is consistent with the purposes of the 1989 Sentencing Act.

The next mitigating factor applied by the trial court was that the Defendant was "motivated by desire to provide what is called necessities . . . to life. And in this day and age, maybe, an automobile is a necessity." See Tenn. Code Ann. § 40-35-113(7). Another mitigating factor applied by the trial court was that the Defendant assisted the authorities. Tenn. Code Ann. § 40-35-113(9). A letter from a detective in the narcotics division of the Sevier County Sheriff's Department was included with the record which documents that the Defendant was helping to assist in an ongoing drug investigation.

Then, the trial court turned to the application of enhancement factors. First, the trial court found that Defendant, as one who helped to obtain drugs for the undercover police officer, was a leader in the commission of this offense. Tenn. Code Ann. § 40-35-114(2). Also, the trial court stated that Defendant obviously had a previous history of unwillingness to comply with the conditions of a sentence that involved release into the community, noting that Defendant was not able to successfully complete probation on other matters. Tenn. Code Ann. § 40-35-114(8). The next enhancement factor applied by the trial court was that the Defendant had no hesitation about committing a crime when the risk to human life was high, specifically referring to the nature of the drug LSD. Tenn. Code Ann. § 40-35-114(10). The final enhancement factor was that the Defendant was on probation for a burglary offense at the time these offenses were committed. Tenn. Code Ann. §

40-35-114(13)(c). The trial court then stated that "the enhancement factors far outweigh the mitigating factors in this case."

Upon review of the record, the trial court's findings of the applicable enhancement and mitigation factors were appropriate, except for the use of the enhancement factor that the Defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(10). Without more than the inherent traits of a drug, the nature of LSD cannot be used to enhance a sentence under factor (10). Prior case law has established that this is true for an offense involving cocaine and other Schedule II drugs, and we find that the legislature has also already considered the inherent nature of the drug LSD in determining the length of punishment. See State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). Therefore, the trial court's application of this enhancement factor, without any other circumstances present to justify a finding that Defendant had no hesitation to commit an offense when the risk to human life was high, was incorrect.

The State argues that the Defendant's sentence should be modified and increased to eleven (11) years on the LSD sale because the trial court gave weight to mitigating factors which did not apply. The State contends that even if the trial court's application of mitigating and enhancement factors is accepted, a minimum sentence was unwarranted because the trial court specifically ruled that the enhancement factors outweighed the mitigating factors. For our review, the trial court must preserve in the record the factors it found to apply and the specific findings of fact upon which it applied the sentencing principles to arrive at the sentence. Tenn. Code Ann. §§ 40-35-210(f) and -209(c).

The State contends that the Defendant received the minimum sentence for his crimes. In reality, the Defendant received the minimum sentence for the Class B felony, the sale of LSD, and received the maximum sentence for the Class C felony, conspiracy to sell LSD. Tenn. Code Ann. § 40-35-112(2) and (3). Beginning with the presumptive sentence, the trial court must "enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(b)(e). There is no mathematical formula in determining the appropriate sentence, rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the Sentencing Act and its findings are adequately supported by the record. State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995). By placing a numeric value on the enhancement and mitigating factors, that removes the judicial discretion necessary to make individualized sentencing determinations. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments, see State v. Shropshire, 874 S.W.2d 634, 642 (Tenn. Crim. App. 1993).

From our review of the record, it is evident that the trial court considered all the evidence in this case and, in light of the various mitigating and enhancement factors, felt that a concurrent sentence of eight (8) years was the most appropriate sentence for the Defendant. The purpose of sentencing is based on general principles, and the Sentencing Act can only be applied on a case by case basis, dependent upon the facts of each case and the circumstances of each defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986). While the trial court stated that the enhancement factors outweighed the mitigating factors, we have found that one of these enhancement factors relied upon by the trial court is inapplicable. Even though application of one enhancement factor was in error, the trial court otherwise

correctly applied the sentencing principles to the facts and circumstances of this case. The length of sentences imposed were not in error, and this issue has no merit.

MANNER OF SERVICE OF SENTENCE

The State argues that the trial court's placement of the Defendant into the Community Corrections program is improper given the Defendant's persistent abuse of probation. The trial court noted that the proof submitted was strong in the Defendant's favor. The trial court stated that he believed Defendant was sincere and was ready to conduct himself as an exemplary citizen. He did not perceive the Defendant to be a drug dealer and thought that additional time of incarceration would not, therefore, serve a deterrent effect. The trial court further stated that he was giving the Defendant "a second, if not third or fourth, chance" by placing him on Community Corrections.

The Community Corrections Act allows certain eligible offenders to participate in community-based alternatives to incarceration. Tenn. Code Ann. § 40-36-103. A defendant must first be a suitable candidate for alternative sentencing. If so, a defendant is then eligible for participation in a community corrections program if he also satisfies several minimum eligibility criteria set forth at Tennessee Code Annotated section 40-36-106(a). However, even though an offender meets the requirements of eligibility, the Act does not provide that the offender is automatically entitled to such relief. State v. Grandberry, 803 S.W.2d 706, 707 (Tenn. Crim. App. 1990); State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the statute provides that the criteria shall be interpreted as minimum standards to guide

a trial court's determination of whether that offender is eligible for community corrections. Tenn. Code Ann. § 40-36-106(d).

While Defendant was not presumed as a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), he is eligible. The record supports the trial court's conclusion that Defendant was a proper candidate for Community Corrections, based upon his conviction of a drug-related, non-violent felony offense and the fact that without this option, he would be incarcerated in a correctional institution. Tenn. Code Ann. § 40-36-106. Furthermore, Defendant did not demonstrate a present or past pattern of violence, and the evidence supports such a finding. Id.

Upon our de novo review, the State bears the burden of proving that the sentence is improper. Tennessee Code Annotated section 40-35-102(3)(C) states that "Punishment shall be imposed to prevent crime and promote respect for the law by encouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants." While the State argues the Defendant is an unsuitable candidate because he has failed to fully comply with the terms of probation on an earlier sentence, the trial court has the discretion to determine that this Defendant is a suitable candidate based upon his remorse and the fact that he was a contributing member of society at the time of the sentencing hearing. A defendant's expression of great remorse is a proper consideration for the trial court during sentencing. See State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995). During the sentencing hearing, the Defendant spoke freely of his remorse for his actions and of his intent to remain sober in order to support his family. In addition, Defendant demonstrated his ability to support himself and to be

a productive member of the community by working on a regular basis. The State has not met its burden on appeal.

Based upon our <u>de novo</u> review of the record, we fail to find any error in the length or the manner of service of the Defendant's sentence. We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:


_____
DAVID H. WELLES, Judge


_____
DAVID G. HAYES, Judge