**STATE of Tennessee, Appellee,**

v.

**Louis Edward MARSHALL, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

March 18, 1993.

Permission to Appeal Denied Sept. 7, 1993.

---

John E. Herbison, Nashville (On Appeal), Russel Church, Asst. Public Defender, Clarksville (At Trial), for appellant.

Charles W. Burson, Atty. Gen. and Merrilyn Feirman, Asst. Atty. Gen., Nashville, Patrick McCutchen, Dist. Atty. Gen. and Edward DeWerff, Asst. Dist. Atty. Gen., Clarksville, for appellee.

## OPINION

TIPTON, Judge.

The defendant, Louis Edward Marshall, was convicted by a jury in the Montgomery County Circuit Court for the offense of possession of cocaine with intent to sell, a Class B felony. He was sentenced to twelve years in the Department of Correction, the maximum for a Range I, standard offender, and fined $10,000. In this appeal as of right, he contends the following:

(1) The indictment failed to state an offense by not alleging that he *knowingly* possessed cocaine.

(2) The cocaine should have been suppressed as evidence because it was obtained by an unreasonable search and seizure without a warrant.

(3) Plain error was committed by the state's improper jury argument.

(4) The sentence, including the fine, was excessive.

The evidence presented at the suppression hearing adequately conveys the facts upon which the defendant was convicted. Clarksville police officer Mike Davis testified that on March 2, 1991, he received an anonymous telephone call from a man who said that the defendant was at the Tenth Street Lounge area selling crack cocaine. The informant described the clothing the defendant was wearing and said that the defendant had crack cocaine in a small plastic bottle. When Davis asked how the informant knew the defendant had cocaine, the informant responded, "I saw him."

Davis stated that he knew the defendant and was aware of about forty arrests of the defendant related to robberies, attempted murder, aggravated assaults, one for cocaine and one or two for marijuana. He said that the defendant was known to carry weapons and had given the police a "hard time" in the past. Also, Davis testified about his experience in drug law enforcement and his familiarity with the Tenth Street Lounge area. He said there was a problem with crack cocaine dealing in the area by people who, when arrested, possessed weapons. He stated that dealers sold to people in vehicles which pulled up. The dealers approached the windows and leaned inside for the drug transaction to be less conspicuous. As to pedestrians, Davis said people approached the dealers who would motion the buyers to the side or into a building where the transactions occurred.

Davis testified that after receiving the call, he and agent Jeff Stanfill went to the designated area for surveillance, using binoculars. They saw the defendant whose clothing met the informant's description. Davis said that they saw the defendant motioning people into a barber shop and approaching cars, leaning inside windows, and going back and forth from his shirt and pants pockets while leaning into the cars. They observed this activity for thirty to forty-five minutes. Stanfill testified that he saw the defendant go into his shirt pocket several times and, on one particular occasion, saw the defendant hand a unit of U.S. currency, denomination unknown, to a person inside a car.

The officers left the area to radio for help, during which time they arrested and booked another individual. Afterwards, they returned to their original vantage point and observed the defendant for another thirty minutes while he conducted the same activities as before. They decided to move in.

Davis testified that the defendant was in the barber shop and was asked to step outside. Davis said he conducted a pat-down search and retrieved a Tylenol bottle from the defendant's pocket. He opened the bottle and found forty-one rocks of crack cocaine. An additional search of the defendant uncovered fifty more cocaine rocks in a plastic bag. Also, the police found $646.00 in cash in the defendant's shirt pocket.

The defendant testified at the hearing and presented other witnesses to prove that he was not selling cocaine as described by the police officers. In fact, the defendant testified that he did not have any cocaine on the day in question and that the officers had planted it on him to make a case.

# I

■ The indictment, in pertinent part, alleged that the defendant

did possess, with intent to sell, a controlled substance, to-wit: Cocaine, as classified in Section 39–17–408 of the Tennessee Code Annotated, in violation of TCA 39–17–417 and against the peace and dignity of the State of Tennessee.

The defendant contends that the indictment fails to allege all the elements of the offense in that it does not allege that his possession was knowing. He refers to the fact that T.C.A. § 39–17–417(a) describes drug offenses as follows:

(a) It is an offense for a defendant to *knowingly:*

(1) Manufacture a controlled substance;

(2) Deliver a controlled substance;

(3) Sell a controlled substance; or

(4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.

(emphasis added).

The defendant states that Tennessee law provides that an indictment must allege everything necessary to constitute an offense and that the failure to do so divests the court of the necessary jurisdiction to proceed with the criminal prosecution. *See State v. Morgan,* 598 S.W.2d 796, 797 (Tenn.Crim.App. 1979); *State v. Hughes,* 212 Tenn. 644, 371 S.W.2d 445, 447 (1963). Thus, he concludes that the failure of the indictment to allege his *knowing* possession renders his conviction void.

While tacitly acknowledging that a violation of T.C.A. § 39–17–417 requires a culpable mental state, the state responds that the indictment's specific reference to the violated statute should constitute a sufficient allegation of the scienter required for the offense, citing cases to that effect from other jurisdictions. *See People v. Del Pilar,* 177 A.D.2d 642, 576 N.Y.S.2d 346 (1991); *State v. Petrone,* 161 Wis.2d 530, 468 N.W.2d 676 (1991); *City of Seattle v. Riggins,* 63 Wash.App. 313, 818 P.2d 1100 (1991); *State v. Howell,* 194 Ga.App. 594, 391 S.E.2d 415 (1990). In response, the defendant counters with *United States v. Pupo,* 841 F.2d 1235 (4th Cir.1988), *cert. denied,* 488 U.S. 842, 109 S.Ct. 113, 102 L.Ed.2d 87 (1988) in which the Fourth Circuit, en banc, rejected the use of a reference to a statute to supply an element of the charge. The court dismissed charges of possession with intent to distribute cocaine and distribution of cocaine because the indictment failed to allege that the defendants acted "knowingly or intentionally" as required by the federal drug law.

In *State v. Cornellison,* 166 Tenn. 106, 59 S.W.2d 514 (1933), our Supreme Court quot-ed with approval the following language in *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932):

The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, *but whether it contains the elements of the offense intended to be charged,* "and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

59 S.W.2d at 515 (emphasis added); *accord State v. Overton,* 193 Tenn. 171, 245 S.W.2d 188 (1951); *State v. Smith,* 612 S.W.2d 493 (Tenn.Crim.App.1980); *Morris v. State,* 608 S.W.2d 154 (Tenn.Crim.App.1980). Further, T.C.A. § 40–13–202 requires an indictment to "state the facts constituting the offense in ordinary and concise language ... in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment...."

■ In the context of Tennessee statutory and case authority on the subject, we do not view the authority cited by the state as persuasive. By requiring the indictment to allege the facts which constitute the offense, Tennessee necessarily requires that the factual allegations must relate to all the essential elements of that offense including that of scienter. Thus, a reference to a criminal statute should not suffice in terms of replacing the necessary factual allegations.[1]

■ However, we do not view the holding in *Pupo* as persuasive authority for dismissing the indictment in this case. An indictment, to be sufficient, need not always contain the language of the statute in order to allege the element of scienter required for the offense. In *Finn v. United States,* 256 F.2d 304, 306 (4th Cir.1958), upon which *Pupo* partly relied, the Fourth Circuit stated that "[w]here willfulness or knowledge is

---

1. In fact, this Court has previously held that a reference to a statute in an indictment may be treated as surplusage. *McCracken v. State,* 489 S.W.2d 48, 51 (Tenn.Crim.App.1972); *Cole v. State,* 512 S.W.2d 598, 601–602 (Tenn.Crim.App. 1974).

made an element of the crime, the statutory requirement[2] is not to be ignored. The charge must either include these terms, *or words of similar import."*

Also, in *Hagner,* the United States Supreme Court, although stressing the need for the essential elements to be alleged, recognized that an indictment failing to allege the elements of an offense in the terms of the statute may still be sufficient, if the elements are necessarily implied from the allegations made. 285 U.S. at 430, 52 S.Ct. at 419. It cited *Grandi v. United States,* 262 F. 123 (6th Cir.1920) and *Phipps v. United States,* 251 F. 879 (4th Cir.1918) as appropriate examples. *Id.* In *Grandi,* the Sixth Circuit held that a charge of possession of goods knowing they had been stolen from part of an interstate commerce shipment "naturally implies" that the goods were, in fact, stolen and a separate allegation of such status was unnecessary. 262 F. at 124. In *Phipps,* a seditious conspiracy case requiring the intent to use force, the Fourth Circuit held that the allegation that the overt act was committed with the intent of engaging in armed hostility against the United States was, by necessary implication, a sufficient allegation of the requisite intent for the conspiracy. 251 F. at 880.

Applying these principles to this case, we hold that the indictment was sufficient to allege the particular offense for which the defendant was tried and convicted. By alleging that the defendant possessed cocaine which he intended to sell, the indictment necessarily implied that it was a knowing possession. *See* T.C.A. § 39–11–301(a)(2) (intentional includes knowing).

## II

▆▆▆▆ The defendant contends that the cocaine was obtained as a result of the illegal

search and seizure of the defendant and the Tylenol bottle. The trial court held that the cocaine was found and seized as a result of a legitimate "stop and frisk" under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As the state concedes, the trial court's analysis, by which it concluded that an articulable suspicion to justify a *Terry* stop would, likewise, justify a search of the bottle, was faulty.[3] *See United States v. Place,* 462 U.S. 696, 706–709, 103 S.Ct. 2637, 2644–2645, 77 L.Ed.2d 110 (1983) (although facts justifying a *Terry* stop will allow for a limited seizure of one's personal effects, a search of a closed container may not be justified on less than probable cause). However, the state contends that the circumstances gave rise to probable cause to arrest the defendant and that the cocaine was obtained during a search incident to that arrest. We agree based upon the information possessed by the officers, at least, at the time of the seizure and search of the Tylenol bottle.

▆▆▆▆ Pursuant to T.C.A. § 40–7–103(a), officers may make a warrantless arrest when they have probable cause to believe that the arrestee has committed or is committing a felony. Probable cause to arrest would exist if the officers had "facts and circumstances within their knowledge and of which they had reasonably trustworthy information [which] were sufficient to warrant a prudent man in believing that the [arrestee] had committed ... an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *State v. Melson,* 638 S.W.2d 342, 350–51 (Tenn.1982). It is a question of probabilities, not technicalities. *See State v. Jefferson,* 529 S.W.2d 674, 689 (Tenn.1975).

▆▆▆▆ If the information possessed by the officers is not of their personal knowl-

---

**2.** The statute to which the Fourth Circuit referred was Fed.R.Crim.P. 7 which, in part, provided that the indictment must contain a "statement of the essential facts constituting the offense charged." Thus, this rule was essentially equivalent to T.C.A. § 40–13–202.

**3.** The tenor of the officers' testimony and the argument by the state in the trial court was that the officers' conduct was justified as a *Terry* stop. However, the legitimacy of an arrest, search or seizure is determined by an objective standard,

regardless of how the police may characterize the reasons for their actions. *See State v. Watkins,* 827 S.W.2d 293, 296 (Tenn.1992); *State v. Browning,* 666 S.W.2d 80, 85 (Tenn.Crim.App. 1983). Further, we are not bound by a trial court's conclusions of law. Thus, we are not limited in our consideration of the case to whether or not the trial court drew appropriate conclusions from the facts it found to exist and we are entitled to draw our own conclusions therefrom.

edge, but is received from an informant, probable cause under Article I, § 7 of the Tennessee Constitution requires that the officers must know that (1) the informant has a basis for his information that a person was involved in criminal conduct and (2) the informant is credible or his information is reliable. *State v. Jacumin,* 778 S.W.2d 430, 436 (Tenn. 1989); *see State v. Moon,* 841 S.W.2d 336, 338 (Tenn.Crim.App.1992). However, any deficiency in the informant's information under this two-prong test may be overcome by independent police corroboration. *Jacumin,* 778 S.W.2d at 436.

When the informant advised officer Davis that his information was based upon personal observation, the police were sufficiently advised of his basis of knowledge. Obviously, because the informant was anonymous, the issue in this case is whether or not the officers had sufficient independent corroboration of the information to satisfy the veracity prong. We conclude that the information within the officers' knowledge at the time of the telephone call and later obtained in their investigation provided sufficient corroboration to give them probable cause to arrest the defendant and seize and search the Tylenol bottle.

The officers were very knowledgeable of the exact details of how drug transactions were made on the street in the Tenth Street Lounge area. They were aware of the defendant's past involvement with drugs and violence. Through their extended observations of the defendant, they saw him conducting himself in a manner identical to that of drug dealers in the area making drug sales and consistent with what the informant said the defendant was doing. Currency was seen to change hands. Also, it was significant that a frisk of the defendant uncovered his possession of an object wholly consistent with a pill bottle, as reported by the informant. All of these circumstances together with the informant's information constituted probable cause.

The defendant contends that corroboration of an informant's information must be of incriminating details, citing *Jacumin,* 778 S.W.2d at 434, and asserts that his observed activity was completely innocent. However, although *Jacumin* cites *State v. Torres,* 146 Ariz. 202, 704 P.2d 1347 (Ariz.App.1985), which holds that corroboration must be of incriminating details and not innocent activity, the citation was only for the purpose of comparing that case to Justice White's concurring opinion in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in which he states that the innocent or suspicious nature of the corroborated activity should not be the standard for analysis. In fact, we have previously noted that *Jacumin* left open the issue of what corroboration must be shown in determining the reliability of an informant's information. *State v. Moon,* 841 S.W.2d at 340.

In *Moon,* as in this case, we were confronted with the issue of whether or not an informant's information had been sufficiently corroborated so as to make it reliable. We discussed various authorities dealing with what constitutes sufficient corroboration when the officers do not have sufficient knowledge of the informant's credibility or the reliability of his information. What becomes apparent from reviewing the authorities cited in *Moon* is that using such terms as "incriminating," "suspicious," "innocent," or "non-suspect" is only of value in the context of the facts and circumstances of any particular case. That is, activity which may be viewed as innocent in one case may be highly suspicious or incriminating in another. For example, if the officers in this case were unaware of how drug deals were being transacted in the area and the informant gave information that the defendant was transporting truck loads of marijuana across state lines, then the defendant's activity which they observed, including his having a bottle-sized object in his pocket, is not really "incriminating" or "suspicious" in the context of showing that the information about transporting marijuana was reliable. The terminology is not applied in a vacuum.

It may be that an informant's information which is deficient under both the basis of knowledge and veracity prongs of the *Jacumin* probable cause test requires greater corroboration than the deficiency of the veracity prong involved in this case, but that analysis is left for another day. We hold

that the following analysis contained in *Moon* applies to this case:

> In the context of the need for corroboration relative to the informant's veracity, a statement of the general requirement is contained in *United States v. Bush*, 647 F.2d 357, 363 (3rd Cir.1981):
>
> > It is difficult to define with precision the quantity of corroboration necessary to demonstrate the informant's veracity. Certainly, more than the corroboration of a few minor elements of the story is necessary, especially if those elements involve non-suspect behavior. It is equally certain, though, that the police need not corroborate every detail of an informant's report to establish sufficient evidence of his veracity.

LaFave takes a similar approach regarding the necessary corroboration to satisfy the veracity prong:

> [I]t is not necessary that the events observed by the police supply probable cause by themselves or that they point unequivocally in the direction of guilt. It is sufficient that they are "unusual and inviting explanation," though "as consistent with innocent as with criminal activity." Thus, when an untested informant says that he has seen horse race bets taken at a steel plant and then passed through the fence to defendant, police observation of packages being passed to the defendant on several occasions "was sufficient to establish the reliability of the informer in this instance." Similarly, where an informer said narcotics were being sold in a certain record shop and that he had purchased narcotics and seen others there, this was adequately corroborated by a half hour surveillance of the shop resulting in "personal observation of known narcotic addicts entering the premises, speaking with a clerk, going to the rear of the store and then exiting with no apparent purchase."

Wayne R. LaFave, [1 *Search & Seizure*, § 3.3(f), 683 (2d ed. 1987) ] (footnotes omitted).

841 S.W.2d at 341. The knowledge acquired by the officers from their past experience and subsequent field investigation of the defendant provided sufficient corroboration of the informant's information for them to conclude that the information was reliable, thus satisfying the veracity prong. *See, e.g., State v. Ballard*, 836 S.W.2d 560 (Tenn.1992).

■ Whether the seizure and search of the Tylenol bottle is viewed as incident to the defendant's arrest, *see Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), or as directly based upon a reasonable belief that the bottle contained contraband, *see, e.g., California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), the exigencies of the situation allowed the officers to proceed as they did without benefit of a warrant. Once the officers had probable cause to believe that the defendant was selling cocaine which was on his person, their conduct in this case by which the cocaine was found did not constitute an unreasonable search and seizure under the Fourth Amendment or Article I, § 7 of the Tennessee Constitution.

### III

■ Next, the defendant contends that his conviction should be reversed because of improper jury argument by the prosecutor. He avers that the prosecutor improperly vouched for the truthfulness of the toxicologist who tested the cocaine and improperly told the jury, in claiming the defendant was a cocaine seller, "It is up to you to tell them that it ain't right and you are not going to put up with it in this county."

As the state contends and the defendant acknowledges, trial counsel neither objected to the prosecutor's argument when made nor included this issue in the motion for new trial. Such failures constitute a waiver of the issue. T.R.A.P. 3(e), 36(a). The defendant contends, though, that the conduct constituted plain error under Tenn.R.Crim.P. 52(b), which provides that an error affecting the substantial rights of a defendant may be acted upon at any time during an appeal even though not raised below. We do not view the conduct as plain error.

First, as to the toxicologist argument, it did not include a direct, personal voucher of the witness' truthfulness. Rather, as the state describes it, the argument was an attempt to demystify the toxicologist's complex testimony. Also, even though the prosecutor told the jury that the substance was cocaine, he immediately apologized, stating that he was not to say that, that he was only to argue, and that the jury's job was to determine if it was cocaine.

Second, as to the argument to "tell them that it ain't right," we acknowledge that it tends to ask the jury to decide the case on matters not factually relevant to the defendant's guilt or lack thereof. Argument seeking a jury's consideration of general deterrence is improper. *See State v. Henley*, 774 S.W.2d 908, 913 (Tenn.1989); *State v. Irick*, 762 S.W.2d 121, 131 (Tenn.1988); *State v. Lunati*, 665 S.W.2d 739, 748 (Tenn. Crim.App.1983). However, in reviewing the strong evidence of guilt in this case and the overall argument by the prosecutor, we determine that the statement did not affect a substantial right of the defendant. We note that, in *State v. Stowe*, 634 S.W.2d 674 (Tenn. Crim.App.1982), a complaint about a very similar argument was deemed waived because of the defendant's failure to preserve the issue before the trial court. In fact, in the context of the full record of this case, the prosecutor's comment would not constitute prejudicial error even if objection had been made. *See Judge v. State*, 539 S.W.2d 340, 344 (Tenn.Crim.App.1976). There is no merit to this issue.

## IV

Finally, the defendant complains about his twelve-year sentence and $10,000.00 fine. As a Range I, standard offender convicted for the felonious possession of cocaine, a Class B felony, the defendant was exposed to a punishment range of eight to twelve years and a fine of up to $100,000. T.C.A. §§ 39–17–417(c)(1), 40–35–112(a)(2). The sentence to be imposed by a trial court is presumptively the minimum in the range, unless there are enhancement factors present. T.C.A. § 40–35–210(c).

Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40–35–210(d) and (e). In this regard, there is no particular value assigned by the 1989 Sentencing Act to the various factors and the "weight afforded mitigating or enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved." *State v. Moss*, 727 S.W.2d 229, 238 (Tenn.1986). In other words, the weight that is given to any existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of sentencing and its findings are adequately supported by the record.

The trial court imposed the maximum sentence upon its determination that the following enhancement factors under T.C.A. § 40–35–114 existed:

(1) The defendant has a previous history of criminal convictions and criminal behavior.

(8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community.

(10) The defendant had no hesitation about committing a crime when the risk to human life was high.

(13) The felony was committed while the defendant was on parole.

The defendant's particular complaints relate to factors (1) and (10).

As to factor (1), the defendant acknowledges that he had three prior convictions for two burglaries and a larceny. However, his complaint relates to the trial court's relying upon the presentence report's unsupported list of many arrests on various offenses in order to find him to have a substantial history of criminal behavior. The state's brief does not respond to the defendant's contention other than to assert that the three convictions were adequate to support the finding of this enhancement factor. Such is true, but the point missed by the state is that if prior criminal behavior was improperly considered, the weight given to this factor

may be diminished in an appropriate case. An arrest or charge is not considered evidence of the commission of a crime. *See State v. Miller,* 674 S.W.2d 279, 284 (Tenn. 1984). A trial court should not use evidence merely showing arrests, without more, to enhance a sentence. *State v. Newsome,* 798 S.W.2d 542, 543 (Tenn.Crim.App.1990).

■ As to factor (10), regarding commission of a crime where the risk to human life is high, the trial court found it applicable because of the "nature of cocaine itself." The defendant complains that using cocaine's nature, without more, to enhance a sentence under factor (10) is barred by T.C.A. § 40-35-114 because the nature of cocaine is essentially an element of the offense. The state responds that this factor applies because cocaine is "a highly addictive substance which imposes a high risk to human life." We conclude that the trial court could not use the inherent traits of cocaine to enhance the sentence under factor (10) given the facts in this case.

Controlled substances have been placed into schedules according to their respective potential for abuse and resulting dangers. By cocaine being designated as a Schedule II controlled substance, it has necessarily been found to have a "high potential for abuse" which "may lead to severe psychic or physical dependence." T.C.A. § 39-17-407. By providing different punishments for the respective schedules, it is apparent that the legislature has already considered the inherent nature of the various drugs in its setting of punishment. In fact, the legislature has singled out cocaine felonies, in the quantity involved in this case, to be treated as Class B felonies. T.C.A. § 39-17-417(c)(1) (Supp. 1992).

The reasoning adopted by the trial court in this case to apply factor (10) would exist in every felony involving a Schedule II drug, particularly cocaine. If used in such a fashion, the presumptive minimum required by T.C.A. § 40-35-210(c) would never apply in Schedule II felony cases. We do not believe that the legislature intended such a result absent clear language to the contrary. Thus, this enhancement factor does not apply in this case.

■ In considering an appropriate sentence, though, we attribute substantial weight to the defendant's history of criminal convictions, unwillingness to comply with a previous sentence involving release in the community and his commission of this crime while he was on parole. We determine that a sentence of eleven years in the Department of Correction as a Range I, standard offender is appropriate.

■ As to the $10,000.00 fine, the defendant contends that there was no showing that he has the present ability to pay it and that it was not justly deserved in relation to the seriousness of the offense. *See* T.C.A. § 40-35-102(1). The trial court's imposition of a fine, within the limits set by the jury, is to be based upon the factors provided by the 1989 Sentencing Act, which include "the defendant's ability to pay that fine, and other factors of judgment involved in setting the total sentence." *State v. Bryant,* 805 S.W.2d 762, 766 (Tenn.1991). Thus, although the defendant's ability to pay a fine is a factor, it is not necessarily a controlling one. We recognize that an oppressive fine can disrupt future rehabilitation and prevent a defendant from becoming a productive member of society. Such results are not usually compatible with the purposes and principles of the 1989 Sentencing Act. However, a significant fine is not automatically precluded just because it works a substantial hardship on a defendant—it may be punitive in the same fashion incarceration may be punitive. Given the seriousness of the criminal conduct reflected in the record, the background and social history of the defendant, and the low potential for rehabilitation, we conclude that the $10,000.00 fine was appropriate.

The conviction is affirmed, but the sentence is modified to eleven years. The case is remanded to the trial court for entry of a judgment conforming with this opinion.

WADE, J., and WILLIAM M. DENDER, Special Judge, concur.