IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. JERRY RAY CHANDLER

**Appeal from the Criminal Court for Hickman County**
**No. 98-5041CR-I     Cornelia A. Clark, Judge**

_____

**No. M1999-00543-CCA-R3-CD - Decided April 27, 2000**

_____

The Defendant, Jerry Ray Chandler, was found guilty by a Hickman County jury of the offense of rape. He was sentenced to twelve years incarceration, which is the maximum sentence for a Range I standard offender for the offense of rape, a Class B felony. He was also assessed a twenty-five thousand dollar fine. In this appeal as of right, the Defendant asserts that both his sentence and fine are excessive. We affirm the judgment of the trial court.

**T.R.A.P. 3; Judgment of the Trial Court Affirmed**

JUDGE DAVID H. WELLES delivered the opinion of the court, in which JUDGE JOSEPH M. TIPTON and SENIOR. JUDGE L.T. LAFFERTY joined.

John D. Henderson, Franklin, Tennessee, for the appellant, Jerry Ray Chandler.

Paul G. Summers, Attorney General and Reporter, Clinton J. Morgan, Assistant Attorney General, Ron Davis, District Attorney General, Judson Phippils, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The proof at trial established that in August 1997, the thirteen-year-old victim in this case, J.R.,[1] went to the Defendant's house to play basketball with his two sons. About 9:00 or 9:30 that evening, the two boys left the area, leaving the victim alone with the Defendant in a storage building. The Defendant asked J.R. if she "wanted to have some fun," but J.R. told him, "no." He began pressuring her to have sexual intercourse with him, but she resisted. He then pushed her down and penetrated her vagina with his penis for five or ten minutes, as she continued to resist. Afterwards, he told her that he would "get" her if she told anybody. She knew the Defendant well, as she visited his home often to play with his sons, and her parents and his parents had been close friends at one time.

_____

[1]It is the policy of this Court to refer to child victims by initials instead of by name.

Several months later, in January 1998, J.R. made a phone call to the Defendant at the request of Larry Holman, a police detective. The conversation was tape recorded, but the recording was of poor quality, making it very difficult to hear the Defendant's side of the conversation. However, both the victim and Det. Holman testified that the Defendant asked J.R. not to tell anyone about the incident because he "had a lot of things going on with his life" and did not need any more trouble.

At the sentencing hearing, J.R. testified that since the rape, she has become withdrawn from her friends, and she does not know who to trust. She does not like to be in crowds because she is afraid people are talking about her. She saw a psychologist for a period of time, and now she receives counseling once a week. She said that she trusted the Defendant prior to this incident. She visited his house on many occasions to play basketball with his sons. Her mother had not objected to her visiting the Defendant's home.

J.R.'s mother testified at the sentencing hearing. She said that her daughter has always been a "good girl," that she would never hurt anyone, and that she has been a good student. She stated that her daughter often visited the Defendant's home with her permission. Since the rape, J.R. does not want to leave the house at all. She has become withdrawn, she has avoided her friends, she has nightmares, and she does not trust anyone.

The Defendant's sister, Dorothy Jean Potter, testified for the defense. She said that at the time of the offense, her brother lived with their mother and older brother in Wrigley, Tennessee. He was married once and he has two sons, but he and their mother were divorced when the boys were small. The Defendant went to a "special school," and he did not attend school for long. To her knowledge, the Defendant has never worked. She said that he once received supplemental security income (SSI) benefits due to his mental condition. She characterized the Defendant as "a little slow," but said "he's just like a normal person to me."

After stating that she had considered all the testimony, the presentence report, the principles of sentencing and arguments of counsel, the nature and characteristics of the criminal conduct, and all evidence and information presented about enhancement and mitigating factors, the trial judge found no mitigating factors and five enhancement factors. The statutory enhancement factors found by the trial judge are as follows:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
. . .
(4) The victim of the offense was particularly vulnerable because of age or physical or mental disability . . . ;
. . .
(6) The personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great;
. . .
(15) The defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense;

. . . [and]

(21) The defendant, who was provided with court-appointed counsel, willfully failed to pay the administrative fee assessed pursuant to § 40-14-103(b)(1).

See Tenn. Code Ann. § 40-35-114. The trial judge stated that she gave great weight to factor (6) and less weight to factors (4) and (15). She then imposed the maximum sentence of twelve years. She also stated that the amount of the fine assessed by the jury was appropriate in this case. The Defendant now asserts that the both his sentence and fine are excessive.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The presumptive sentence for rape, a Class B felony, is the minimum sentence in the range if there are no enhancement or mitigating factors. See Tenn. Code Ann. § 40-35-210(c). If there are enhancement factors but no mitigating factors, the court may set the sentence above the minimum but still within the range. See id. § 40-35-210(d). If there are enhancement and mitigating factors, the court must start at the minimum sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence as appropriate for the mitigating factors. See id. § 40-35-210(e). In this case, the trial court found no mitigating factors and five enhancement factors, and then enhanced the sentence from the minimum sentence of eight years to the maximum sentence of twelve years. See id. § 40-35-112(a)(2).

On appeal, the Defendant sets forth no mitigating factors, and he challenges the application of only two enhancement factors: factors (15) and (21). Factor (21) allows enhancement when a defendant, who was provided with court-appointed counsel, willfully fails to pay the administrative fee. See id. § 40-35-114(21). At the sentencing hearing, the trial judge found that a $50.00

administrative fee was assessed against the Defendant and that the fee had not been paid. The Defendant argues that the failure to pay the fee was not willful because he was indigent, he was incarcerated at the time of the assessment of the fee, his bail was set at $100,000.00, and he could not afford to pay his bail in order to get out of jail. However, the evidence also showed that at the time of his arrest, the Defendant was receiving supplemental social security income benefits. We conclude that the record supports the factual determination that the Defendant had the ability to pay the $50.00 fee from his SSI benefits. Because he failed to pay the fee, the application of factor (21) was appropriate.

Factor (15) allows enhancement of a sentence when a defendant abuses a position of public or private trust. See id. § 40-35-114(15). With respect to this factor, the trial judge found the following:

> I think that factor fifteen may apply as to a position of private trust, although I don't give it as much weight. Mr. Chandler was not in a family or father figure roll specifically to [J.R.] but, in fact, they were neighbors, they lived very nearby, the children played together. A level of trust had been developed by [J.R.] and her mother that she was willing to place her daughter regularly under the supervision of Mr. Chandler at his home and allow her unlimited access there, and I think that access ultimately did facilitate the commission of this offense.

We believe the evidence supports this determination. Although the Defendant was not in an obvious position of trust, such as a parent, babysitter, teacher, or coach, he nevertheless occupied a position of private trust. As noted by the trial court, the victim often visited the Defendant's residence. The Defendant would sometimes pick her up and drive her home. She played with the Defendant's sons. Both the victim and her mother trusted the Defendant. The victim's mother had no objections to the victim spending time with the Defendant and allowed her to visit often. We reject the Defendant's contention that he was merely a "casual visitor" with whom the victim had no trusting relationship. See State v. Kissinger, 922 S.W.2d 482, 488-89 (Tenn. 1996) (holding defendant was merely a casual visitor in the victim's house and did not occupy a position of private trust where no proof suggested that he visited frequently or that the victim or other children were placed in his care). Thus, the trial court properly enhanced the Defendant's sentence based on the existence of this factor.

The State urges us on appeal to find that the trial judge erred by not applying enhancement factor (7), that the offense was committed to gratify the defendant's desire for pleasure or excitement. See Tenn. Code Ann. § 40-35-114(7). In considering this factor, the trial court stated, "I am not convinced in this case that sufficient proof has been offered as to that element." We find no error. We first note that our supreme court has rejected the argument that all rapes are motivated by the desire for pleasure or excitement. See State v. Adams. 864 S.W.2d 31, 34-35 (Tenn. 1993). Our supreme court has observed that some rapes are not committed for pleasure at all and that the desire for pleasure cannot be presumed by the act of rape. See id. at 35. The Tennessee Supreme Court has further instructed us that

> [e]nhancement factor (7), unlike most of the other sentencing factors, calls into question a defendant's reasons for committing a crime. Human motivation is a

tangled web, always complex and multifaceted. To prove defendant's motives will always be a difficult task. But the legislature, in its wisdom, has placed that obligation on the state when the state seeks an enhanced sentence.

State v. Kissinger, 922 S.W.2d 482, 491 (Tenn. 1996).

The trial judge found that the state failed to meet its burden of proving the existence of the "pleasure or excitement" enhancement factor. We decline to disturb that finding.

Having found that the trial court applied five enhancement factors after considering the appropriate sentencing principles, we affirm the twelve year sentence imposed on the Defendant for the offense of rape.

The Defendant next argues that the fine imposed by the trial court is excessive. The jury assessed a fine of $25,000.00 against the Defendant, which is the maximum fine authorized for a Class B felony. See Tenn. Code Ann. § 40-35-111(b)(2). At the sentencing hearing, the Defendant argued that the amount of the fine was "too high" because he was indigent and had no means with which to pay the fine. He noted that his only income came from supplemental security income disability benefits. The trial judge stated that the "amount of the fine is appropriate in this case," and she imposed a $25,000.00 fine. She did acknowledge that "because of incarceration, it may not get paid." On appeal, the Defendant argues that he should be excused from the obligation of paying a fine in any amount in this case because (1) he has been declared an indigent person by the trial court, (2) he is not entitled to release from prison on bail due to his rape conviction, (3) he presently has no assets other than family help, and he has a debt of bank notes, and (4) he is facing a sentence of twelve years. Essentially, the Defendant claims he should not be required to pay a fine because he does not have the wherewithal to do so.

In State v. Bryant, 805 S.W.2d 762 (Tenn. 1991), the Tennessee Supreme Court recognized the authority of the appellate courts to review fines imposed by the trial court. See id. at 766-67. When an offense is punishable by a fine in excess of $50.00, it is the obligation of the jury to set a fine, if any, within the ranges provided by the legislature. See Tenn. Code Ann. § 40-35-301(b). The trial court, in imposing the sentence, shall then impose a fine in an amount not to exceed the fine fixed by the jury. See id. The trial court's imposition of a fine is to be based upon the factors provided by the 1989 Sentencing Act, which includes the defendant's ability to pay the fine. See State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993); Tenn. Code Ann. § 40-35-207(a)(7). However, the defendant's ability to pay, while a factor to consider, "is not necessarily a controlling one." Marshall, 870 S.W.2d at 542; see also State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). As we stated in Marshall,

We recognize that an oppressive fine can disrupt future rehabilitation and prevent a defendant from becoming a productive member of society. Such results are not usually compatible with the purposes and principles of the 1989 Sentencing Act. However, a significant fine is not automatically precluded just because it works a substantial hardship on a defendant -- it may be punitive in the same fashion incarceration may be punitive.

Marshall, 870 S.W.2d at 542.

We realize that the Defendant is indigent and that the fine may work a substantial hardship on him.  Notwithstanding, we conclude that the fine imposed is appropriate and "justly deserved in relation to the seriousness of the offense."  Tenn. Code Ann. § 40-35-102(1).  The Defendant was convicted of raping a young girl who was thirteen years old at the time of the offense.  The trial court appropriately applied five enhancement factors when sentencing the Defendant.  We approve the imposition of the maximum fine.

The judgment of the trial court is affirmed.

_____
Judge David H. Welles

_____
Judge Joseph M. Tipton

_____
Senior Judge L.T. Lafferty