# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 19, 2002

## STATE OF TENNESSEE v. CHRISTOPHER LYNN BRABSON

### Direct Appeal from the Criminal Court for McMinn County
### No. 00-352    Carroll L. Ross, Judge

_____

### No. E2001-01730-CCA-R3-CD
### August 21, 2002
_____

The appellant, Christopher Lynn Brabson, was convicted by a jury in the McMinn County Criminal Court of one count of the sale of .5 grams or more of cocaine, a Class B felony. The jury also assessed a fine of $80,000. Following a sentencing hearing, the trial court imposed a sentence of ten years incarceration in the Tennessee Department of Correction. On appeal, the appellant alleges: (1) the evidence is insufficient to support a verdict of guilt beyond a reasonable doubt, (2) the trial court erred in sentencing, and (3) the jury imposed an excessive fine. We affirm the judgment of the trial court but reduce the fine to $25,000.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed as Modified.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Merrilyn Feirman, Nashville, Tennessee, and William C. Donaldson, Athens, Tennessee, for the appellant, Christopher Lynn Brabson.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Shari Tayloe, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On November 2, 1999, Agent Mike Finley of the Tennessee Bureau of Investigation (TBI) was involved in a drug enforcement investigation with Detective Bill Matthews and Detective Patrick Upton of the Athens Police Department. Len Norman, a cooperating individual, was also involved in the investigation. On the day of the offense, Agent Finley spoke by telephone with Norman and agreed to meet him at Athens Regional Park. Agent Finley proceeded to the park where he was joined by Detective Matthews, Detective Upton, and Agent Brian Freeman of the TBI. When Norman arrived at the park, Agent Finley searched Norman's person and his Chevrolet Blazer

to insure that no drugs or weapons were present. After ascertaining that Norman did not have drugs or weapons in his possession, Agent Finley placed a body transmitting device on Norman and retained a miniature receiver in his own possession. He also placed a receiver with a recording device in the vehicle in which Agent Freeman, Detective Matthews, and Detective Upton were traveling.

Agent Finley and Norman left the park in Norman's Chevrolet Blazer and drove to the appellant's residence at Hillcrest Apartments in Athens. Agent Freeman, Detective Matthews, and Detective Upton followed in another vehicle. Agent Finley and Norman parked in front of the apartment building, and Norman left the vehicle and walked to the door of appellant's apartment. After knocking on the front door, Norman entered the apartment. Agent Finley heard the appellant and Norman discussing a drug transaction, specifically the weighing of what Agent Finley believed to be crack cocaine.

Approximately five minutes after entering the apartment, Norman exited and returned to the Blazer. Norman showed Agent Finley a cellophane wrapper containing 15 or 20 "solids" of crack cocaine and advised Agent Finley that he could purchase approximately 5.5 grams of crack cocaine for $500. Using a set of jewelry scales, Agent Finley weighed the drugs and determined the weight to be approximately 5.5 grams. Agent Finley gave Norman $500 and instructed Norman to offer to purchase the drugs for $450. Norman returned to the apartment, negotiated with appellant, and eventually paid the appellant $450 for the drugs. Norman left the apartment and got into the Blazer with the crack cocaine and the remaining $50.

Following the transaction, Agent Finley and Norman drove back to Athens Regional Park and met with Agent Freeman, Detective Matthews, and Detective Upton. Agent Finley again searched Norman's person and the Blazer. No other drugs or weapons were found.

At trial, Norman testified that, on November 2, 1999, he was working with Agent Finley as an informant. On that day, he went to the appellant's apartment and purchased approximately 5.5 grams of crack cocaine from the appellant. During the transaction, Norman was wearing a "body wire" which allowed Agent Finley to remain in the vehicle and monitor the purchase. Norman had worked with Agent Finley on several occasions and was usually paid $150 to $200 for his services.

Detective Matthews testified at trial that he began working with Norman in 1997, specifically relating that, in 1998, Norman provided him with information regarding drug transactions. He noted that Norman first contacted him after Norman was arrested on charges relating to stolen checks. Detective Matthews introduced Norman to Agent Finley. On November 2, 1999, Detective Matthews met Agent Finley and Norman at Athens Regional Park. He then followed Finley and Norman to appellant's apartment and monitored the drug transaction from his vehicle. Detective Matthews testified that he was able to recognize appellant's voice due to previous experience with appellant.

Based upon the foregoing evidence, the appellant was convicted of one count of the sale of .5 grams or more of cocaine. As a result of his conviction, the appellant was sentenced to ten years incarceration and was ordered to pay a fine of $80,000. On appeal, the appellant challenges the sufficiency of the evidence underlying his conviction, the length of his sentence, and the amount of his fine.

## II. Analysis
### A. Sufficiency of the Evidence

The appellant first challenges the sufficiency of the evidence supporting his conviction of the sale .5 grams or more of cocaine. Specifically, he argues that the transaction was simply a casual exchange between friends. This court accords considerable weight to a jury's verdict of guilt in a criminal trial. Essentially, a jury conviction removes the presumption of innocence the appellant had at trial and replaces it with a presumption of the appellant's guilt on appeal. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Accordingly, the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. Id. Furthermore, the appellant must establish that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Moreover, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

To sustain the appellant's conviction, the State had to prove that the appellant knowingly sold .5 grams or more of cocaine to Norman. Tenn. Code Ann. § 39-17-417(a)(3) and (c)(1) (1997). The State introduced testimony by Agent Finley, Detective Matthews, and Norman that Norman was thoroughly searched before and after the transaction and no drugs or weapons were found on Norman's person or in his vehicle. They asserted that Norman entered appellant's apartment with $500 and exited with approximately 5.5 grams of crack cocaine. Furthermore, Norman testified that he paid appellant $450 for the crack cocaine and appellant gave him $50 change. Agent Finley further testified that he carried the substance to the TBI laboratory. The lab report identified the substance as crack cocaine. This constitutes sufficient evidence for a reasonable trier of fact to conclude beyond a reasonable doubt that the appellant was guilty of the sale of .5 grams or more of cocaine. This issue is without merit.

### B. Length of Sentence

The appellant also maintains that his sentence was excessive. Appellate review of the length of a sentence is de novo. Tenn. Code Ann. § 40-35-401(d) (1997). Furthermore, the appellant bears the burden of demonstrating the impropriety of his sentence to this court. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, because the record reveals that the trial court adequately considered sentencing principles and all relevant facts and

circumstances, this court will accord the trial court's determinations a presumption of correctness. Tenn. Code Ann. § 40-35-401(d); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

This court considers the following factors in conducting its de novo review: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the defendant in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (Supp. 2001); see also Ashby, 823 S.W.2d at 168.

Specifically, the appellant complains that, although guilty of a crime, the transaction was simply a casual exchange between friends. Therefore, the trial court should have considered in mitigation that the appellant committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. Tenn. Code Ann. § 40-35-113(11) (1997). The appellant contends that application of this mitigating factor would mandate a reduction in appellant's sentence.

The appellant, a Range I offender, was convicted of a Class B felony. "The presumptive sentence for a Class B, C, D and E felony shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c). Therefore, in sentencing the appellant, the trial properly started at eight years, the minimum sentence for a Class B felony. However, if there are enhancement but no mitigating factors, then the court may set the sentence above the minimum in that range but still within the range. Tenn. Code Ann. § 40-35-210(d).

The trial court found that two enhancement factors applied to the appellant. First, the trial court found that the appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(1) (1997). The appellant's criminal history included convictions for aggravated robbery and several misdemeanor convictions. Additionally, the appellant had previous juvenile convictions. We agree with the trial court's finding that enhancement factor (1) applies to the appellant.

Moreover, the trial court found that the appellant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. Tenn. Code Ann. § 40-35-114(8). The presentence report, which the appellant conceded was correct, noted that, in 1993, the appellant pled guilty to two counts of aggravated robbery and was placed in a community corrections program. Only two months after being placed in community corrections, a violation report was filed, indicating that the appellant had violated the rules of his supervision. In January 1994, the appellant's community correction placement was revoked and he was sentenced to the Tennessee Department of Correction. We must agree with the trial court's application of enhancement factor (8).

The trial court found no mitigating factors. As we previously noted, the appellant contends that because the transaction was simply a casual exchange between friends, the trial court should have concluded that the offense was committed under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. Tenn. Code Ann. § 40-35-113(11). The trial court concluded that the circumstances of the offense did not warrant application of mitigating factor (11). We agree. The transaction reflected a business deal, not a simple exchange between friends. Norman entered the appellant's apartment and negotiated the sale of approximately 5.5 grams of crack cocaine. The drugs were already at the apartment and were packaged in cellophane when Norman showed them to Agent Finley. The appellant and Norman negotiated the price of the drugs, with the appellant agreeing to reduce the price from $500 to $450. Moreover, the audio taped conversation between the appellant and Norman includes a discussion regarding previous drug sales by the appellant.

As noted, in imposing sentence, the trial court began at the minimum sentence for a Class B felony, correctly concluded that two enhancement factors applied but found no mitigating factors. The court then enhanced the sentence to ten years. We find no error.

C. Fine

Finally, the appellant complains that the $80,000 fine imposed by the jury is excessive. A defendant convicted of the sale of .5 grams or more of cocaine may be fined not more than $100,000. Tenn. Code Ann. § 39-17-417(c)(1). However, as the appellant correctly notes, a trial court or an appellate court may modify a fine imposed by a jury. Specifically,

> [t]he trial court's imposition of a fine, within the limits set by the jury, is to be based upon the factors provided by the 1989 Sentencing Act, which include "the defendant's ability to pay that fine, and other factors of judgment involved in setting the total sentence." State v. Bryant, 805 S.W.2d 762, 766 (Tenn. 1991). Thus, although the defendant's ability to pay a fine is a factor, it is not necessarily a controlling one. We recognize that an oppressive fine can disrupt future rehabilitation and prevent a defendant from becoming a productive member of society.

State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993).

On appeal, the State concedes that the fine imposed on appellant is excessive and suggests that a reduction to approximately $25,000 is appropriate. We agree. At sentencing, the trial court expressed doubt that the appellant would be able to pay the entire amount of the fine, but declined to reduce the amount at that time. This court has previously concluded that such a large fine was not appropriate where the defendant clearly had an inability to pay such an amount. See State v. Rita Davis, No. M1999-01281-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 731, at **16-17 (Nashville, Sept. 22, 2000), perm. to appeal denied, (Tenn. 2001). Although the appellant has a GED, his work history is limited. Notably, much of his young life has been spent in jail. He has two young children, one of whom is in foster care. His future earning capacity is obviously quite limited. Accordingly, we modify the fine to $25,000.

### III.  Conclusion

We affirm the appellant's conviction and sentence, but modify the fine imposed to $25,000.

_____
NORMA McGEE OGLE, JUDGE