IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 26, 2002

## STATE OF TENNESSEE v. JIMMY WAYNE PERKEY

**Direct Appeal from the Criminal Court for Knox County**
**No. 72968     Ray L. Jenkins, Judge**

_____

**No. E2002-00772-CCA-R3-CD**
**August 12, 2003**
_____

The defendant, Jimmy Wayne Perkey, pled guilty to aggravated vehicular homicide. The trial court subsequently sentenced the defendant to serve twenty-five years as a Range I standard offender and ordered the defendant to pay a $50,000 fine. The defendant brings the instant appeal challenging his sentence and the imposition of his fine. After reviewing the record, we find that none of the defendant's claims merit relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

William C. Talman, Knoxville, Tennessee, for the appellant, Jimmy Wayne Perkey.

Paul G. Summers, Attorney General & Reporter; Helena Walton Yarbrough, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Deborah Herron, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

At the defendant's plea submission hearing, the defendant stipulated to the following facts in support of his conviction. On April 22, 2001, the defendant, who had been drinking two to three beers per hour for eight hours, drove his vehicle in a reckless manner on Clapp Chapel Road in Knox County. Several witnesses observed the defendant's erratic driving, including one incident in which the defendant hit a telephone pole, damaging his vehicle's radiator, and then proceeded to drive away. Tracing the defendant's path from the radiator fluid that subsequently leaked from the defendant's vehicle, the investigators found that the defendant then drove his vehicle on the wrong side of the road until he reached Tazwell Pike. He turned right on Tazwell Pike and continued to drive on the wrong side of the road. The victim, sixteen-year-old Joshua Cody Greene, was driving

in front of the defendant, traveling in the same direction on Tazwell Pike. As the victim slowed to make a left turn, the defendant tried to pass him in the lane of on-coming traffic. During his attempt to pass young Mr. Greene, the defendant "T-boned" the youth's vehicle, killing him instantly. At the time of his arrest, the defendant had a blood alcohol level of 0.23.

Prior to this incident, the defendant had two convictions for driving under the influence, and seven other convictions for various offenses including assault, aggravated assault, possession of prohibited weapons, and public intoxication. Furthermore, the defendant was serving a probationary sentence when he committed the instant crime. The state introduced evidence of the defendant's criminal record in the form of a pre-sentence report at the sentencing hearing. Additionally, the state introduced a victim impact statement from the victim's mother, as well as the testimony of the victim's father. In her victim impact statement, the victim's mother expressed, in heart wrenching detail, the effect that her son's death has had on her. The victim's father testified that he had been greatly impacted by his son's death, as well. He had spoken with his son fifteen minutes before he died and arrived at his son's accident scene shortly after the accident occurred, only to discover that the "mangled and disfigured body" at the accident scene was the body of his son. At the conclusion of proof, the defendant apologized for his actions.

As stated supra, the trial court subsequently ordered the defendant to serve a twenty-five-year sentence and pay a $50,000 fine. The defendant challenges the propriety of both his sentence and fine. After reviewing the record, we conclude that the trial court did not abuse its discretion in sentencing or fining the defendant.

## Sentencing Challenge

The defendant challenges the appropriateness of his twenty-five year sentence for his aggravated vehicular homicide conviction. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. See Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

Turning more specifically to the facts of this case, the defendant pled guilty to aggravated vehicular homicide. Because this offense is a Class A felony, the starting point for sentencing determinations is the middle of the range. See Tenn. Code Ann. §§ 39-13-218(d); 40-35-210(c).

The trial court classified the defendant as a Range I offender; thus, twenty years was the mid-point against which the trial court was to balance any mitigating and enhancement factors.

When balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. See Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. See id.

The trial court applied four enhancement factors to the defendant's sentence: factor (2), that the defendant has a history of previous criminal convictions or behavior; factor (9), that the defendant has a history of a previous unwillingness to comply with a sentence involving release into the community; factor (11), that the defendant had no hesitancy committing the crime when the risk to human life was high; and factor (17), that the defendant committed the crime under circumstances in which the potential for bodily injury to the victim was great. See Tenn. Code Ann. § 40-35-114(2), (9), (11), (17) (Supp. 2002). The defendant argues that the trial court inappropriately applied factors (11) and (17) to his conviction because these factors constitute essential elements of his crime. When applying these two contested factors to enhance the defendant's sentence, the trial court merged these two factors and accordingly gave them the weight of one factor.[1]

Turning first to the trial court's application of enhancement factor (11), this Court has held that this enhancement factor may be applied to a defendant's sentence if it can be determined from the record that the defendant created a high risk to lives other than the victim's life. See State v. Bingham, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995) overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000) . However, the proof must establish the existence of actual persons whose lives were put at risk by the defendant's actions. See State v. Guadalupe Arroyo, No. E2002-00639-CCA-R3-CD, 2003 WL 1563209, at *3 (Tenn. Crim. App. at Knoxville, Mar. 27, 2003). While the stipulated proof states that several people observed the defendant's erratic driving on the day of the crime, the record is devoid of any references to the amount of traffic on the road on which the accident occurred or of any other individuals who were endangered by the victim's drunk driving. Accordingly, we find that there are insufficient facts to warrant the application of this factor to enhance the defendant's sentence.

Turning next to the trial court's application of enhancement factor (17), this Court had held that this factor is inapplicable to the sentence of a defendant convicted of aggravated vehicular homicide because the serious bodily injury contemplated in the enhancement factor is an inherent

---

[1] The trial court decided to merge these two factors after finding that their similar nature warranted a merger. However, as discussed infra, factor (11) addresses the risk of bodily injury to those other than the victim, whereas factor (17) addresses the risk of bodily injury to the actual victim of the crime. See Tenn. Code Ann. § 40-35-114(11), (17) (Supp. 2002).

element of the offense of aggravated vehicular homicide.  See Bingham, 910 S.W.2d at 452. Specifically, the offense of aggravated vehicular homicide requires that the defendant recklessly kill the victim, and enhancement factor (17) requires that the victim, not persons other than the victim as contemplated by enhancement factor (11), sustain serious bodily injury.  Therefore, because the harm contemplated by enhancement factor (17) is inherent in the offense of aggravated  vehicular homicide, we find that the trial court erred by applying this enhancement factor to the defendant's sentence.

Although the trial court erred by applying enhancement factors (11) and (17) to the defendant's sentence, we find that the application of the remaining two enhancement factors is sufficient to support an imposition of a twenty-five year sentence.  See, e.g., State v. Johnny D. Roberts, No. M2002-02996-CCA-R3-CD, 2003 WL 21766240 (Tenn. Crim. App. at Nashville, July 30, 2003) (finding that the defendant's twenty-five-year sentence, the maximum sentence within his range, was supported by the application of two enhancement factors, factors (2) and (9), and no mitigating factors).  As discussed supra, the defendant does not challenge the applicability of the two enhancement factors that the trial court applied to his sentence, factors (2) and (9).  Moreover, the defendant also does not contest the trial court's finding that no mitigating factors were applicable to his sentence.  Accordingly, we find that the defendant's resulting twenty-five year sentence is supported by the application of two enhancement factors and no mitigating factors to his presumptive twenty-year sentence.  Therefore, the defendant's challenge regarding the length of his sentence lacks merit.

## Propriety of Defendant's Fine

The defendant next challenges the propriety of his $50,000 fine, which he argues was set on an inappropriate basis.  The defendant argues that the trial court adopted the state's reasoning for the imposition of this fine, namely that the imposition of the fine would force the defendant to pay the fine before applying for a reinstated driver's license.  The state argued that the imposition of this fine would deter the defendant from acquiring a new license, a necessary precaution in light of the legislature's failure to preclude an individual convicted of aggravated vehicular homicide from obtaining a driver's license.  The state counters that there is no evidence to support the defendant's conclusion that the trial court adopted the state's reasoning when imposing this fine and that the fine is supported by the facts of the defendant's case.

Although the defendant has a constitutional right to have any fine over fifty dollars set by a jury, see Tenn. Const. art. VI, § 14, the defendant waived that right in the instant case, as was his statutory right, see Tenn. Code Ann. § 40-35-301(b).  In cases where the defendant waives his or her constitutional right to have a jury impose a fine, a trial court may set the amount of the defendant's fine within statutory parameters. See State v. Bryant, 805 S.W.2d 762, 767 (Tenn. 1991). Moreover, once a trial court imposes a fine, this Court may review the fine on appeal.  See id. at 767 (holding that appellate courts have authority to review fines imposed by trial courts as an aspect of criminal sentencing).  When reviewing the propriety of the fine, this Court must examine "the defendant's ability to pay that fine, and other factors of judgment involved in setting the total sentence." Id. at

766. Therefore, although the defendant's ability to pay a fine is a factor to be considered during appellate review, it is not necessarily a controlling one. See State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Carter, 988 S.W.2d 145 (Tenn. 1999). A fine is not automatically precluded because it works a substantial hardship on the defendant; it may be punitive in the same fashion incarceration may be punitive. See id.

In the instant case, the defendant was convicted of aggravated vehicular homicide, and the maximum fine authorized by statute for this Class A felony is $50,000. See Tenn. Code Ann. §§ 39-13-218(d); 40-35-111(b)(2). The defendant has several prior convictions for alcohol related offenses, including driving under the influence, signifying the defendant's pattern of behavior that ultimately resulted in the death of a sixteen-year-old young man. In light of these facts, we conclude that the fine imposed is appropriate and "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1). Moreover, there is no indication from the record that the trial court chose to impose this fine based on the state's proposed reasoning, namely the deterrent effect that such a fine would have on the defendant's ability to be eligible for a reissued license. Because we find that this fine is appropriate in light of the seriousness of the defendant's crime, we further find that defendant's challenge to the imposition of this fine lacks merit.

## Conclusion

In light of the foregoing, we find that the defendant's challenge to his sentence and fine lacks merit. Accordingly, the judgement of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE