# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 14, 2002

## STATE OF TENNESSEE v. RICHARD RUSSELL BRANDT

### Appeal from the Circuit Court for Bedford County
### No.14866     Charles Lee, Judge

---

### No. M2001-02129-CCA-R3-CD - Filed October 22, 2002

---

The Appellant, Richard Russell Brandt, was convicted by a Bedford County jury of voluntary manslaughter and received a fifteen-year sentence, as a persistent offender. On appeal, Brandt raises the following issues for our review: (1) whether the evidence was sufficient to support the jury's verdict, and (2) whether his sentence was proper. After review, we find that Brandt's issues are without merit. Accordingly, the judgment of the Bedford County Circuit Court is affirmed.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.

DAVID G. HAYES, J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

Merrilyn Feirman, Nashville, Tennessee, and Andrew Jackson Dearing, III, Assistant Public Defender, Shelbyville, Tennessee, for the Appellant, Richard Russell Brandt.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; David H. Findley, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

Anthony Blake Wisdom and the Appellant met while patients at the Tony Rice Drug Center in Bedford County. After both men left the center, they became acquainted with the victim, Boyd Brown, and made arrangements to rent a room in his trailer. On January 15, 2001, the Appellant, the victim, and Wisdom drove to the store to get beer. Upon returning to the trailer, all three men drank and watched wrestling. In need of more beer, the Appellant and Wisdom walked to the store and purchased a twelve pack. Wisdom, after returning to the trailer, was "feeling sweaty" and decided to take a shower. As Wisdom stepped out of the shower, he heard the Appellant and the

victim arguing, and the victim say to the Appellant, "If you don't like it, you can get the fuck out." He did not hear the Appellant respond and proceeded to the bedroom to get dressed. Wisdom then walked into the living room and saw the Appellant walk up to the victim and pretend to punch him. The victim "smirked" and said, "You won't hit me." At that point, the Appellant wrapped his arm around the victim's throat in a choke hold, and "[t]hey began to wrestle to the ground." The victim hit his head on the floor. Wisdom thought the two men were wrestling and told them to "quit playing around." The victim's legs were kicking and, then, he went limp.

The Appellant got up from the floor and said, "[H]e deserved to die." Wisdom checked the victim to see if he had a pulse. The Appellant grabbed money out of the victim's pockets, turned the victim over onto his back, and calmly asked Wisdom to help move the body into the bathroom. Wisdom refused, and the Appellant dragged the body into the bathroom himself. The Appellant and Wisdom packed their personal belongings, and the Appellant wiped down the trailer to remove any fingerprints, removed a trash bag from the trailer, and covered up a blood stain with a towel. The two men left the area; Wisdom was driving because the Appellant could not drive a stick-shift. The next day, Wisdom left the Appellant inside a store and returned to Nashville. He contacted the police on January 17, 2001. The Appellant was later arrested at the Salvation Army in Murfreesboro. He gave a statement to the police, during which he changed his story several times.

On February 22, 2001, the Appellant was indicted for second degree murder. Following a jury trial, he was found guilty of the lesser offense of voluntary manslaughter and, based upon his classification as a persistent offender, was sentenced to a fifteen-year term of imprisonment. This timely appeal followed.

**ANALYSIS**

**I. Sufficiency of the Evidence**

The Appellant argues that the evidence introduced at trial was insufficient to support his conviction for voluntary manslaughter. Specifically, he contends that the evidence

> failed to show that Mr. Brandt either knowingly or intentionally caused Mr. Brown's death. . . . There was nothing in Mr. Wisdom's testimony that would have indicate[d] that Mr. Brandt intended to cause the death of Mr. Brown nor that Mr. Brandt was reasonably certain that his conduct would [cause] Mr. Brown's death.

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. 1999); *State v. Burlison*, 868 S.W.2d

713, 719 (Tenn. Crim. App. 1993). Instead, the Appellant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). As in the case of direct evidence, the weight to be given circumstantial evidence and "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citation omitted).

Voluntary manslaughter is defined as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a) (1997). Intentional conduct refers to a person who acts intentionally with respect to a result of the conduct when it is the person's conscious objective or desire to cause the result. Tenn. Code Ann. § 39-11-106(a)(18) (1997). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-106(a)(20) (1997). Whether the Appellant "intentionally" or "knowingly" killed his victim is a question of fact for the jury. Intent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the Appellant's conduct, the nature of the act, and from all the circumstances surrounding the commission of the offense. *See State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993); *see generally State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997).

The proof at trial, in the light most favorable to the State, established that the Appellant and the victim were engaged in an argument, and the victim's demeanor was described as irate. Both had been drinking. The Appellant faked punching the victim and, after the victim responded, "You won't hit me," the Appellant placed the victim in a choke hold, lasting from a minute and a half to two minutes. The victim stopped moving, and the Appellant stated, "[H]e deserved to die." The Appellant removed money from the victim's pockets and dragged him into the bathroom. Thereafter, the Appellant attempted to remove any incriminating evidence from the trailer and stole the victim's truck. After the Appellant's arrest, he was untruthful with police authorities. We find the evidence sufficient to support the jury's verdict of voluntary manslaughter, *i.e.*, that the Appellant intentionally or knowingly killed Mr. Brown in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner. This issue is without merit.

## II. Sentencing

The Appellant argues that his fifteen-year sentence as imposed by the trial court was excessive. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the

determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (1997); *Ashby*, 823 S.W.2d at 168. Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000) (citing *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997)).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, where the trial court fails to comply with the statutory provisions of sentencing, appellate review is *de novo* without a presumption of correctness. In the case before us, the record demonstrates that the trial court properly considered relevant sentencing principles. Accordingly, we apply the presumption.

As a Range III offender, the sentencing range for voluntary manslaughter, a class C felony, is ten to fifteen years. Tenn. Code Ann. § 40-35-112(c)(3) (1997). In determining the Appellant's sentence, the trial court applied two enhancement factors: (1) The Appellant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and (8) The Appellant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(1), (8) (Supp. 2001).

The Appellant does not contest the application of enhancement factors (1) and (8). Regarding enhancement factor (1), the Appellant's criminal history includes twelve class E forgery convictions, six class E theft convictions, a class A misdemeanor theft conviction, two convictions for simple possession of marijuana, passing worthless checks, driving under the influence, being declared a habitual motor vehicle offender, and numerous other misdemeanor convictions. Regarding enhancement factor (8), the presentence report reflects that the Appellant "has a marked history of failure to cooperate and/or adhere to the rules of any alternative sentence afforded to him."

With respect to mitigating proof, the Appellant contends that the trial court erred by not applying the "catch-all" or non-enumerated mitigator (13), based upon his professed "change of life." *See* Tennessee Code Annotated § 40-35-113(13) (1997). At the sentencing hearing, the following colloquy occurred:

Q. Since you have been in jail have you experienced a change in your attitude and your philosophy toward life?

A. Yes, sir.

Q. What have you learned?

A. I have learned to totally trust upon the Lord. I have turned my whole life over to him. We have a daily Bible study, morning prayer. And I just tell everything to the Lord. He has made a remarkable change in my life.

The trial court declined to apply mitigator (13), finding that:

The Court could consider the defendant's stated change of attitude, change of life that he has professed here today as a mitigating factor under 40-35-113(13), which is the so-called catch-all provision. But even if the defendant is sincere, the Court in this case does not find that to be a mitigating factor.

The trial court was in the best position to determine the credibility of the Appellant, based upon the demeanor and appearance of the Appellant when testifying. This court gives deference to the trial court's findings in that regard. Although we find the Appellant's recent profession of faith is commendable, his reward will follow at the appropriate time and from a court much greater than ours. Therefore, we agree with the trial court that mitigating factor (13) should not have been applied to the Appellant's sentence.

The presumptive sentence for a class C felony "shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c) (2001). When there are enhancement factors and no mitigating factors, there is no presumptive sentence and the court may sentence above the minimum in the range. Tenn. Code. Ann. § 40-35-210(d). The weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. *State v. Boggs*, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). The weight to be afforded mitigating and enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved. *Id.* at 476; *see also State v. Marshall*, 870 S.W.2d 532, 541 (Tenn. Crim. App. 1993). Of particular weight in this case are the Appellant's prior convictions and his failure to comply with conditions of release. We conclude that the record supports the trial court's decision to enhance the Appellant's sentence beyond the minimum of the range. Therefore, we find that a sentence of fifteen years for voluntary manslaughter is justified.

# CONCLUSION

Based upon the foregoing, we find that the evidence was sufficient to support the Appellant's conviction for voluntary manslaughter. We further conclude that the trial court properly sentenced the Appellant to fifteen years in the Department of Correction. Accordingly, the judgment of the Bedford County Circuit Court is affirmed.

_____
DAVID G. HAYES, JUDGE