IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 22, 2003

## STATE OF TENNESSEE v. MICHAEL SALVATORE MORANI

**Appeal from the Criminal Court for Cumberland County**
**No. 6395     Leon Burns, Jr., Judge**

---

**No. E2002-02394-CCA-R3-CD**
**August 14, 2003**

---

The defendant, Michael Salvatore Morani, was convicted of one count of attempted first degree murder and one count of theft over $10,000. The trial court imposed consecutive Range I, standard sentences of twenty-three years and five years respectively. The defendant was fined a total of $60,000. In this appeal of right, the defendant contends that the twenty-three-year sentence for attempted murder is excessive and that the trial court erred by imposing the maximum fines on each count. The judgments are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA McGEE OGLE, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal), and Cynthia S. Lyons, Assistant Public Defender (at trial), for the appellant, Michael Salvatore Morani.

Paul G. Summers, Attorney General & Reporter; P. Robin Dixon, Jr., Assistant Attorney General; and Thomas Tansil and Gary McKenzie, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The defendant first met the victim, Alan Logan, in August of 1999 when he applied for benefits at the Department of Human Services in Roane County, where the victim worked. As the victim testified at the trial court, he allowed the defendant to share his Cumberland County residence for approximately two months, providing both "emotional and financial support." Two years later, the defendant arrived unexpectedly at the residence of the victim, apparently "on foot" and attempting to rekindle their friendship. Approximately one hour into the conversation, Jennifer Reynolds, the defendant's girlfriend, arrived in a vehicle. The defendant spoke to her privately and she left. About twenty minutes later, she returned, talked with the defendant and left again. After returning to the residence, the defendant remarked, "I've killed a man . . . because he had something

I wanted and he wouldn't give it to me." He then displayed a handgun. As the victim reached for his drink, the defendant ordered him to "freeze." In response, the victim threw a table at the defendant and fled toward the door. The defendant shot the victim once in the arm before his gun jammed, allowing the victim to run to a nearby residence, where the neighbor telephoned 911. The victim hid in the woods as the defendant took the victim's 1999 Buick Regal and drove away.

On September 4, 2001, the defendant was indicted for attempted first degree murder, a Class A felony, see Tenn. Code Ann. §§ 39-12-101, 39-13-202, and theft over $10,000, a Class C felony, see Tenn. Code Ann. § 39-14-105(4). Twenty-four days later, the defendant was transferred to the Cumberland County Sheriff's Department from the Knox County Detention Center. At trial, the issues were whether the state had established premeditation for attempted first degree murder and whether it had demonstrated that the defendant took the vehicle with the intent to deprive.

At the sentencing hearing, Danny Williams, the probation officer who prepared the presentence report, described the defendant as uncooperative and testified that the defendant refused to provide any information, other than that his "childhood was a bitch." Williams's report indicated that the defendant had committed two previous misdemeanor offenses in Roane County, two misdemeanors in Knox County, and had pending charges in Roane County for the sale of cocaine and in Knox County for aggravated robbery. The presentence investigation further established that the bullet was lodged in the victim's arm and that he would not fully recover.

James "Butch" Upton, the last of the defendant's foster parents, testified that the defendant had been in and out of numerous foster homes and had always lacked guidance and stability. The defendant lived with Upton for four or five months.

In arriving at a sentence of twenty-three years, three years above the midpoint in the range, the trial court applied the following four enhancement factors:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community;
>
> (9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense; and
>
> (10) The defendant had no hesitation about committing a crime when the risk to human life was high.

Tenn. Code Ann. § 40-35-114(1), (8)-(10) (1997).[1]

In mitigation, the trial court considered two factors: (6) that the defendant, because of his youth, lacked substantial judgment in committing the offense; and (13) that the defendant had a stressful childhood. See Tenn. Code Ann. § 40-35-113(6), (13).

In this appeal, the defendant contends that the attempted murder sentence was excessive. Citing State v. Belser, 945 S.W.2d 776, 792 (Tenn. Crim. App. 1996), the defendant argues that enhancement factor (10), that "the defendant had no hesitation about committing a crime when the risk to human life was high," Tenn. Code Ann. § 40-35-114(10) (1997), is improper because it is an inherent element of the offense of attempted first degree murder. The state concedes that the trial court improperly applied enhancement factor (10), but contends the misapplication should have no effect upon the term imposed.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class A felony conviction, the presumptive sentence is the midpoint within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court shall set the sentence at or above the midpoint. Tenn. Code Ann. § 40-35-210(d). If there are mitigating factors but no enhancement factors, the trial court shall set the sentence at or below the midpoint. Id. A sentence involving both enhancement and mitigating factors, as here, requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-

---

[1]Effective July 4, 2002, the legislature has amended Tennessee Code Annotated section 40-35-114 by renumbering original enhancement factors (1) thru (20) and including as enhancement factor (1) that "the offense was an act of terrorism, or was related to an act or terrorism."

210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

In our view, the trial court misapplied enhancement factor (10). Enhancement factors (1), (8), and (9) were, however, properly applied and are entitled to considerable weight. The mitigating factors, as indicated by the trial court, are entitled to less weight and are substantially outweighed by those enhancement factors found applicable. Under these circumstances, the twenty-three-year sentence, three years more than the midpoint in the range, was warranted.

The defendant also asserts that the $50,000 fine for attempted first degree murder and the $10,000 fine for theft over $10,000 are excessive. A jury is statutorily authorized to assess a maximum fine of $50,000 for the commission of a Class A felony, as well as a maximum fine of $10,000 for the commission of a Class C felony. See Tenn. Code Ann. § 40-35-111(b)(1), (3). Although the fines imposed by the trial court were within the statutorily permissible range, the defendant complains that the excessive amount of the fines will "cripple any chance of [his] re-entry into society."

In State v. Bryant, 805 S.W.2d 762, 766 (Tenn. 1991), our supreme court ruled that the defendant's ability to pay is a consideration in the imposition of a fine. Although the jury is to "fix" the amount of any fine and report it with a guilty verdict, the trial court is actually obligated to impose the fine, not to exceed the amount fixed by the jury, as part of the sentence. See Tenn. Code Ann. § 40-35-301(b). The trial court's imposition of a fine, if any, is to be based upon the factors and principles of the 1989 Sentencing Act, such as the defendant's prior history, potential for rehabilitation, and financial means, and mitigating and enhancing factors that are relevant to an appropriate total sentence. See Bryant, 805 S.W.2d at 766.

The defendant contends that his financial status justifies less than the maximum fines. Although indigency may in certain cases justify no fine, it must be considered with other relevant factors:

> Thus, although the defendant's ability to pay is a factor it is not necessarily a controlling one. We recognize that an oppressive fine can disrupt future rehabilitation and prevent a defendant from becoming a productive member of society. Such results are not usually compatible with the purposes and principles of the 1989 Sentencing Act. However, a significant fine is not automatically precluded just because it works a substantial hardship on a defendant -- it may be punitive in the same fashion incarceration may be punitive.

State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993).

Here, the defendant's violent conduct resulted in permanent bodily injury to the victim. Although a young man, the defendant has developed a significant criminal history over a short period of time. He expressed no remorse and was uncooperative with the probation officer who prepared

his presentence report.  That demonstrates a disregard for the laws of society.  Thus far, the defendant has exhibited little effort toward rehabilitation.  In our view, the amounts of the fines are not excessive under these circumstances.

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE