IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2016

## STATE OF TENNESSEE v. ERIC D. CRENSHAW

**Appeal from the Circuit Court for Madison County**
**No. 15-181      Donald H. Allen, Judge**

---

**No. W2015-01577-CCA-R3-CD  -  Filed April 4, 2016**

---

The Defendant, Eric D. Crenshaw, pleaded guilty to theft of property valued at $10,000 or more but less than $60,000, a Class C felony, evading arrest, a Class E felony, theft of property valued at $500 or less, a Class A misdemeanor, possession of drug paraphernalia, a Class A misdemeanor, and driving on a revoked license, a Class B misdemeanor. *See* T.C.A. §§ 39-14-103 (2014) (theft), 39-16-603 (2014) (evading arrest), 39-17-425 (2014) (unlawful drug paraphernalia), 55-50-504 (2012) (driving on a revoked license). Pursuant to the plea agreement, the Defendant would receive concurrent sentences as a Range I, standard offender, with the length and the manner of service of the sentences to be determined by the trial court. The trial court sentenced the Defendant to serve six years for the felony theft conviction, two years for the evading arrest conviction, eleven months, twenty-nine days for the misdemeanor theft conviction, eleven months, twenty-nine days for the possession of drug paraphernalia conviction, and six months for the driving on a revoked license conviction. On appeal, the Defendant contends that the trial court erred by (1) denying him alternative sentencing and (2) imposing excessive fines for his felony theft and evading arrest convictions. We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

George Morton Googe, District Public Defender, and Gregory D. Gookin, Assistant Public Defender, for the appellant, Eric D. Crenshaw.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

At the guilty plea hearing, the State's recitation of the facts showed that

Mr. Crenshaw was stopped for speeding on I-40 in the area of the rest stop in the west part of Madison County. He was stopped and he was in a vehicle that had dealer tags. When they advised him of the speeding, they did run his driver's license and found them to be revoked. The trooper . . . went back and approached his car and advised him that she was not going to arrest him that she was going to cite him into court because he was not from here, but she told him to get out of the car and stand and sit at the rest area and wait for some friends that he said were going to pick him up from Shelby County. She then turned to walk back to the vehicle to continue writing the ticket . . . and he took off and left down I-40.

She then jumped in her patrol car and another trooper was there and got in his patrol car and they followed him. He got off the interstate at the airport exit and continued on south past the airport area and there's a curve there . . . he took that curve and ended up in a parking lot. He did slow down for that, but at one point . . . [he] reached 128 miles per hour . . . . He did slow down, but he . . . could not make that curve at that speed and he did not slow to make that curve and then immediately pulled into a parking lot I guess realizing that he didn't know where he was because he wasn't from here or he wasn't going to escape the troopers because several more had arrived at that point.

They did get him out of the vehicle at that point and he was placed under arrest because he committed the crime of felony evading arrest . . . from operating that vehicle upon a public highway and evading a stop and arrest by fleeing [in] that motor vehicle from the law enforcement officers whom he knew to be law enforcement personnel attempting to stop him. Of course, they were in their trooper cars with lights and sirens going.

Once they did stop Mr. Crenshaw, they did discover the vehicle that he was in was stolen out of the State of Ohio. He did knowingly obtain or exercise control over property equal to or over the value of $10,000 without the effective consent of the owner being Donald Gibson[.]

Upon further search of the vehicle, they did find a purse belonging to Kimberlin [sic] Meyer out of Shelby County and . . . Mr. Crenshaw did knowingly obtain or exercise control over property under the value of $500

-2-

without the effective consent of the owner . . . with the intent to deprive the owner of this property. There had been some credit card activity . . . however that did not happen in this county . . . .

. . . .

The State would show that Mr. Crenshaw did unlawfully drive that vehicle upon a public highway while his driver's license was cancelled, suspended or revoked.

. . . .

[U]pon searching the vehicle, they did discover some drug paraphernalia, specifically a crack pipe. I believe there was some other paraphernalia that you use with that, some wool and a cooking spoon. Thus the State would show at trial that Mr. Crenshaw did unlawfully and intentionally attempt to use drug paraphernalia . . . .

. . . .

Your Honor, . . . he was weaving in and out of traffic on the interstate, but no one was hurt and did not cause a wreck. The speed did get rather excessive. None of the troopers were hurt in this matter. You do see on the video that once Mr. Crenshaw – everything was fine when he was initially stopped for speeding, but he then fled from the police. Once he was stopped in the parking lot, he immediately got out and got on the ground and surrendered to law enforcement.

The Defendant told the trial court that he fled from the troopers but that he fled because he received a telephone call from a Shelby County hospital informing him that his father was receiving emergency surgery and requesting the Defendant's presence at the hospital. Although the Defendant agreed the vehicle he was driving was stolen from Ohio, he denied knowing it was stolen. Defense counsel stated that had the matter gone to trial, he would have presented evidence that a woman took the car from the victim.

The trial court advised the Defendant of his constitutional rights. Relative to the Defendant's right to a trial by jury, the Defendant said he understood he was "giving up" his right by pleading guilty. The court also advised the Defendant of the possible sentences and fines associated with each offense to which he was pleading guilty, and the Defendant said he

understood. The Defendant told the court that he was entering his guilty pleas freely and voluntarily.

At the sentencing hearing, a presentence report was received as an exhibit. The report reflects that the Defendant had previous convictions in Ohio for nine counts of receiving stolen property valued at less than $100, eight counts of breaking and entering, two counts of possession of unspecified controlled substances, two counts of possession of drug paraphernalia, two counts of driving on a suspended or cancelled license, two violations of the "driver's license law," two traffic-related offenses, resisting arrest, reckless driving, burglary other than a habitation, criminal trespass, possession of cocaine, and obstruction of justice. At the time of the offenses and the presentence investigation, the Defendant's driving privileges were suspended.

The report reflects that the Southern Ohio Federal Probation Office reported that the Defendant was convicted of receiving firearms while under indictment and sentenced to serve twenty-four months in confinement and to serve thirty-six months on supervised release. The Defendant's supervised release was revoked on August 23, 1996.

The Defendant had a ninth-grade education and obtained his GED in 1995 or 1996. The Defendant reported successfully completing a drug rehabilitation program in Ohio. The Defendant reported working two jobs at the time of the presentence investigation and said his employment would continue upon his release from confinement.

Donald Gibson, the victim whose car was stolen, submitted a victim impact statement in which he said he and his wife felt less safe in their neighborhood because his vehicle was stolen from his driveway. He said that he and his wife worked hard to be able to live in a comfortable and quiet community and that the theft had disrupted "all of that." Mr. Gibson stated a Bible given to him by his deceased sister was inside the vehicle and was never returned to him. Although Mr. Gibson did not think it was his role to decide the Defendant's sentence, Mr. Gibson said the "whole ordeal was incredibly frustrating, all because someone thought the rules didn't apply to [him]." Mr. Gibson reported his out-of-pocket expenses as $500 for his automobile insurance deductible, $1000 for an employer-owned laptop computer, and $200 for one day of work. The vehicle was replaced by the insurance company. Mr. Gibson requested $1700 restitution, although he did not appear at the sentencing hearing.

Kimberlynn Meyer, the victim whose purse was stolen, did not submit a victim impact statement and did not appear at the sentencing hearing. The record reflects that her belongings were returned to her.

Florence Crenshaw, the Defendant's aunt, testified that the Defendant had a history of getting into trouble. She explained that the Defendant's father, who was intellectually disabled, was not involved in the Defendant's upbringing. Ms. Crenshaw had been the Defendant's father's court-appointed Power of Attorney for twenty-seven years. She said that she lived in Shelby County and that the Defendant's father had lived in a nursing home in Jackson. She noted the Defendant's father died on the day of the Defendant's arrest. Ms. Crenshaw sent the Defendant a photograph of his father, who was in a nursing home, days before the Defendant's arrest. She said that the Defendant lived in Ohio and that he unsuccessfully attempted to find someone to drive him to Tennessee to visit before his father died. She presented a letter from the Defendant in which he stated, "No matter how or whatever it takes to get there, Dad, I'll be there to see you."

Ms. Crenshaw testified that since age seven, the Defendant and his father only communicated through letters. She said that many of the Defendant's letters discussed his arrests, that the Defendant admitted stealing in an effort to be arrested, and that the Defendant wanted to be arrested in order to have food and shelter.

Ms. Crenshaw testified that the night before the Defendant's arrest, the Defendant arrived in Memphis and that the next morning, the Defendant learned his father was in Jackson. Ms. Crenshaw said that she spoke to the Defendant on the telephone, that the Defendant's father had been moved to a Jackson hospital, that she provided the Defendant with directions to the hospital, and that the police attempted to stop the Defendant about twelve miles from the hospital. She said the Defendant's father was the only reason the Defendant came to Tennessee.

Ms. Crenshaw testified that she worked as a Social Security disability benefits advocate and that she knew the Defendant had mental health issues. She said the Defendant needed to address his problems and to attend a drug rehabilitation program. She said that the Defendant was wrong for taking things from others but that she thought the Defendant "meant well." She requested the trial court send the Defendant to Ohio because the Defendant had no family in Tennessee.

Upon questioning by the trial court, Ms. Crenshaw clarified that the Defendant's father left Ohio when the Defendant was age seven and that the Defendant's father suffered from severe epilepsy and could not support his family. She said the Defendant was unable to visit his father before his father died. Ms. Crenshaw acknowledged that the vehicle was taken from Mr. Gibson's driveway on November 16, 2014, and that the Defendant was arrested on January 14, 2015. She did not know the Defendant's activities between those dates.

The Defendant testified that he was age forty-six, that he had many previous convictions, and that the convictions were due to his drug addiction. He requested placement in a drug rehabilitation program regardless of the trial court's decision regarding manner of service. He said that although he was driving the stolen vehicle at the time of his arrest, he did not steal the car from Mr. Gibson's driveway.

The Defendant testified that he fled from the troopers because after the first trooper stopped him and returned to her police cruiser to write the ticket, he received a telephone call from a hospital nurse regarding his father's medical condition. He said that he explained to the nurse he had been stopped by the police for speeding and that the nurse reported she did not believe the Defendant's father would live much longer. He said that he received another phone call five to ten minutes later and that he "took off" without thinking. He said he surrendered to the police and did not flee on foot. He apologized for his conduct and said he was "running on emotions."

The Defendant testified that his most recent conviction, receiving stolen property, was in September 2014. He said the charge was a misdemeanor and that he received probation. He explained the conviction was related to his unknowingly purchasing stolen property.

In determining the length and the manner of service of the sentences, the trial court considered the evidence presented at the guilty plea and sentencing hearings, the presentence report, arguments of counsel, and the principles and purposes of the sentencing act. Relative to the nature of the conduct, the court considered the Defendant's possessing a stolen vehicle and a stolen purse, possessing a crack pipe and a cooking spoon, and fleeing from the police after initially being stopped for speeding. The court noted that the Defendant drove in excess of 128 miles per hour and that his Ohio license was revoked at the time of the offenses. The court noted that nobody was injured during the police chase but found that other drivers on the roadway were placed in danger as a result of the Defendant's reckless and erratic driving.

The trial court noted the Defendant's explanations for possessing the stolen vehicle and his fleeing the police. The court found that the Defendant admitted possessing the drug paraphernalia. Relative to the Defendant's potential for rehabilitation, the court found "some indication" the Defendant was willing to enter a drug rehabilitation program.

Relative to mitigation, the trial court stated that it considered the testimony regarding the Defendant's father's medical condition at the time of the present offenses but found that the Defendant did not have to steal a car or someone's purse containing credit cards to drive to Tennessee to visit his father. The court stated that it also considered the Defendant's admitting wrongdoing and pleading guilty but noted the Defendant received a beneficial plea agreement. *See id*. § 40-35-113(13) ("Any other [mitigating] factor consistent with the

purposes of this chapter.").  The court placed slight weight upon the Defendant's accepting responsibility for his conduct.

Relative to enhancement factors, the trial court found that factor (1) applied based upon the Defendant's previous convictions contained in the presentence report.  *See* T.C.A. § 40-35-114(1) (2014) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]").  The court noted that pursuant to the plea agreement, the Defendant would receive Range I, standard offender sentences but that the Defendant's previous convictions, which included misdemeanors and felonies, might have qualified the Defendant as a career offender.  The court placed "great weight" upon the Defendant's previous convictions.  The court also found that factor (8) applied because the Defendant had previously received the benefit of alternative sentencing but had failed to comply with the terms of his release on several occasions by committing new criminal offenses.  *See id*. § 40-35-114(8) ("The Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community[.]").  The court placed great weight upon this factor.  The court, likewise, found that factor (13) applied based upon the presentence report.  *See id*. § 40-35-114(13) ("At the time the felony was committed, . . . the defendant . . . [was] released on probation[.]").  The trial court discussed the Defendant's lengthy criminal history and noted the Defendant had convictions spanning thirty years, many of which occurred while the Defendant was serving a sentence on "community control" or probation.  The court found that the Defendant was serving a sentence on probation at the time of the offenses and placed great weight upon this factor.

Relative to alternative sentencing, the trial court found that the Defendant was not an appropriate candidate for alternative sentencing based upon his lengthy criminal history.  The court found that because of the Defendant's unsuccessful attempts to serve a previous sentence on probation, the Defendant had a poor potential for rehabilitation.  The court found that the interests of protecting society from the Defendant's possible future criminal conduct were great and that measures less restrictive than confinement had been frequently and recently applied to the Defendant without success.  The court noted that it would recommend the Defendant for a drug and alcohol treatment program while in confinement.

The court sentenced the Defendant to serve six years for the felony theft conviction and imposed a $2000 fine.  The court sentenced the Defendant to serve two years for felony evading arrest and imposed a $2000 fine.  The Defendant received eleven months, twenty-nine days at 75% service for misdemeanor theft, and the court imposed a $500 fine.  The court sentenced the Defendant to six months at 75% service for driving on a revoked license and imposed a $250 fine.  The court sentenced the Defendant to serve eleven months, twenty-

nine days for possession of drug paraphernalia and imposed a $250 fine, for an effective six-year sentence. This appeal followed.

## I      Manner of Service

The Defendant contends that the trial court erred by denying alternative sentencing. He argues that a "period of shock incarceration, followed by intensive supervision, would have fulfilled the goals of sentencing while appreciating the seriousness" of his conduct because he admitted guilt, took responsibility for his conduct, and informed the court that his previous criminal convictions were the result of drug addiction. The State responds the trial court did not abuse its discretion. We agree with the State.

This court reviews challenges to the manner of service of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant to incarceration when:

(A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C); *see Trotter*, 201 S.W.3d at 654.

The record reflects that the trial court considered all the appropriate principles and purposes of sentencing. In denying alternative sentencing, the court relied heavily upon the Defendant's previous criminal convictions. The record supports the court's finding that the Defendant had a lengthy history of criminal conduct, and we note the Defendant conceded at the sentencing hearing that he had numerous criminal convictions. The record also supports the court's determining that confinement was necessary to protect society from the Defendant's criminal conduct because the Defendant had engaged in criminal conduct for more than thirty years. *See id*. § 40-35-103(1)(A). We note that many of his previous convictions were theft-related. Likewise, the record reflects that the Defendant had received the benefit of probation and parole previously but that the Defendant's probation was revoked on numerous occasions and that his federal parole was revoked, as well. *See id*. § 40-35-103(1)(C). Although the Defendant was eligible for alternative sentencing, his previous convictions outweigh any argument he is a favorable candidate for alternative sentencing. We note that the Defendant was on probation for offenses committed in Ohio at the time of the present offenses. The trial court did not abuse its discretion by denying alternative sentencing, and the Defendant is not entitled to relief on this basis.

## II    Excessive Fines

The Defendant contends that the trial court imposed excessive fines relative to the felony theft and evading arrest convictions. He argues that the trial court failed to consider his inability to pay the fines and notes that the State did not request the imposition of fines because he "wouldn't be able to pay the fines anyway" if the court ordered the Defendant to serve his sentences. He requests this court waive the fines imposed for these two convictions. The State responds that the trial court did not abuse its discretion. We agree with the State.

Our Tennessee constitution states, "No fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact . . . ." Tenn. Const. art. VI, § 14; *see* T.C.A. § 40-35-301(b) (2014). A "defendant may waive the right to have a jury fix the fine and agree that the court fix it, in which case the court may lawfully fix the fine at any amount that the jury could have." T.C.A. § 40-35-301(b); *see State v. Sanders*, 735 S.W.2d 856, 858 (Tenn. Crim. App. 1987). If, however, "the conviction is based upon a guilty plea and there is no jury waiver . . . , a jury shall be impaneled to fix the fine, if any, to be imposed by the court in an amount not to exceed the fine fixed by the jury." T.C.A. § 40-35-301(b).

The imposition of fines is viewed as a portion of a defendant's sentence, and the standard of review is abuse of discretion. *See State v. Bryant*, 805 S.W.2d 762, 727 (Tenn. 1991); *see also Bise*, 380 S.W.3d at 707; *State v. Anthony Xen Maples*, No. E2013-00961-CCA-R3-CD, 2014 WL 1056671, at *5 (Tenn. Crim. App. Mar. 18, 2014), *no perm. app. filed*. The amount of any fine should be based upon the principles of sentencing, including "prior offenses, potential for rehabilitation, mitigating and aggravating circumstances, and other matters relevant to an appropriate sentence." *Bryant*, 805 S.W.2d at 765-66. "A defendant's ability to pay is a factor in the establishment of fines." *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996); *see* T.C.A. § 40-35-207(a)(7) (2014) (requiring upon the trial court's request that the presentence report include information to "assist the court in imposing a fine"). "[A]lthough the defendant's ability to pay a fine is a factor, it is not necessarily a controlling one." *State v. Marshall*, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). Furthermore, "a significant fine is not automatically precluded just because it works a substantial hardship on a defendant – it may be punitive in the same fashion incarceration may be punitive." *Id.*

The record reflects that on May 18, 2015, the Defendant signed the form requesting the trial court accept his guilty pleas and waiver of trial by jury. The form reflects that the Defendant had the right to a trial by jury and that the Defendant had "the right to have a jury impose any fine over $50.00." The record does not reflect that the negotiated plea agreement included a provision related to the imposition of fines, although the prosecutor told the trial judge at the sentencing hearing that the State was not requesting the imposition of fines. However, the request to accept the Defendant's guilty pleas form reflects the maximum fines that could be imposed for each offense. Likewise, the trial court advised the Defendant at the guilty plea hearing of the possible fines for each offense. As a result, we conclude that the Defendant waived his right to have a jury determine any fines in excess of fifty dollars.

Relative to the amount of the fines imposed by the trial court, the record reflects that the trial court considered the presentence report when making its sentencing determinations. The presentence report shows that the Defendant "does not claim any financial assets or

liabilities and stated he could pay $50.00 per month toward restitution and fines." We note the trial court did not order restitution. Furthermore, the Defendant's affidavit of indigency reflects that the Defendant's weekly income was between $600 and $700 and that the Defendant had $20,000 in a bank account. The Defendant's relevant theft conviction was a Class C felony, and the maximum fine allowable by law was $10,000. *See* T.C.A. § 40-35-111(b)(3) (2014). The Defendant's felony evading arrest conviction was a Class E felony, and the maximum fine allowable by law was $3000. *See id.* § 40-35-111(b)(5). Therefore, the court imposed fines that were permitted by our sentencing statutes. We conclude that based upon the Defendant's extensive criminal history and his low potential for rehabilitation, the trial court did not abuse its discretion by imposing a $2000 fine for the felony theft conviction and a $2000 fine for his evading arrest conviction. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE